No. 106,096

STATE OF KANSAS, *Appellee*, v. DANNY KEEL, *Appellant*.

(357 P.3d 251)

Opinion filed August 28, 2015.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Natalie A. Chalmers*, assistant solicitor general, argued the cause, and *David A. Page*, county attorney, and *Derek Schmidt*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: Danny Keel was convicted of one count of possession of methamphetamine and one count of possession of drug paraphernalia. He argued before the Court of Appeals that the State presented insufficient evidence to show that he had constructive possession of the drugs and drug paraphernalia found inside the residence he shared with his girlfriend. Keel also argued that the jury was improperly instructed on the definition of drug paraphernalia. The Court of Appeals rejected both arguments and affirmed his convictions. *State v. Keel*, No. 106,096, 2012 WL 4373012 (Kan. App. 2012) (unpublished opinion). We granted review on both of these issues.

After review was granted, Keel filed a motion with this court to correct an illegal sentence. He alleged that this court's recent decision in *State v. Murdock*, 299 Kan. 312, 319, 323 P.3d 846 (2014), *modified* by Supreme Court order September 19, 2014, (because

Kansas did not classify crimes as person or nonperson offenses prior to July 1, 1993—the date the Kansas Sentencing Guidelines Act [KSGA], K.S.A. 21-4701 *et seq.*, went into effect—all out-of-state convictions occurring before that date must be classified as nonperson offenses for criminal history purposes), meant the district court erred in classifying his January 1993 Kansas convictions for attempted aggravated robbery and aggravated robbery as person felonies, resulting in a criminal history score of B. Keel argued that the legal reasoning of *Murdock* dictated that his convictions be classified as nonperson felonies. Keel noted that classifying his two 1993 convictions as nonperson felonies would result in him having a criminal history score of E and, in turn, he would receive a shorter sentence for his current crimes of conviction. We ordered supplemental briefing from the parties on this issue.

While this appeal was pending before the court, the legislature passed House Bill 2053, L. 2015, ch. 5, secs. 1-5 (effective April 2, 2015), in response to the *Murdock* decision. The bill added explicit language to K.S.A. 2014 Supp. 21-6810 (formerly K.S.A. 21-4710) and K.S.A. 2014 Supp. 21-6811 (formerly K.S.A. 21-4711) stating that, for criminal history purposes, a conviction or juvenile adjudication for an offense committed prior to July 1, 1993, shall be scored as a person or nonperson crime based on the classification in effect for the comparable offense under the Kansas Criminal Code when the current crime of conviction was committed. The legislature also stated its explicit intention that these amendments applied retroactively. L. 2015, ch. 5, secs. 1 and 2. We ordered supplemental briefing from the parties on whether the amendments could be properly applied to the classification issue raised in this case.

We conclude that the State presented sufficient evidence to show that Keel possessed both the methamphetamine and drug paraphernalia found inside his home. We further conclude that the jury instruction on paraphernalia was not erroneous and did not deprive Keel of a fair trial. Thus we affirm Keel's convictions. Finally, we conclude that Keel, pursuant to K.S.A. 22-3504(1), can raise a challenge to the classification of his prior convictions for the first time on appeal. But we reject his argument contending that

his pre-KSGA convictions must be classified as nonperson offenses for criminal history purposes.

Revisiting our construction of the KSGA as a whole now persuades a majority of this court that the legislature, in enacting the sentencing guidelines, contemplated that a pre-KSGA conviction could be classified as a person offense if such a classification was proper. Further, we conclude that *State v. Williams*, 291 Kan. 554, 244 P.3d 667 (2010)—the case *Murdock* relied on for the rule that a prior crime's classification is determined by the classification in effect for the comparable Kansas crime when it occurred—was inconsistent with our prior decision in *State v. Vandervort*, 276 Kan. 164, 72 P.3d 925 (2003), *overruled in part by State v. Dickey*, 301 Kan. 1018, Syl. ¶ 4, 350 P.3d 1054 (2015). *Vandervort*, a case involving prior convictions from Virginia, established that a prior crime's classification is determined based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed.

These conclusions lead us to hold today that Keel's 1993 Kansas convictions for attempted aggravated robbery and aggravated robbery must be classified as person offenses based on the classification in effect for those crimes when Keel committed his current crimes of conviction. Because the district court classified Keel's prior convictions as person offenses, Keel was assigned a correct criminal history score and, in turn, received a legal sentence under the sentencing guidelines. Thus we affirm Keel's sentence.

## FACTS

On May 14, 2010, officers with the Moundridge Police Department and the McPherson County Sheriff's Department executed a search warrant on a house located in Moundridge where officers believed Keel resided.

When officers knocked on the door of the residence, Shayna Wulf, Keel's girlfriend, answered the door. When asked whether Keel was there, Wulf said that he was not and that she did not know when he would return. Despite Wulf's answer, the officers proceeded to search the house for Keel. They eventually found him inside a hidden room near the kitchen. The doorway to the

room could not be seen from inside the residence because it was covered by a set of bookshelves; the bookshelves were fastened with a hinge and could be opened and closed. After kicking in an outside door, officers discovered Keel lying on the floor of the hidden room. Officers also discovered a surveillance system consisting of a camera and a monitor inside the room.

During the search of the house, the officers discovered drugs and suspected drug paraphernalia. The officers found a glass pipe containing residue on a shelf in the room where Keel was discovered; the pipe subsequently tested positive for methamphetamine. Officers also seized: (1) a small baggie lying in plain view on a desk near the hidden room containing a white crystal substance that later tested positive for methamphetamine; (2) a black plastic bong in a closet located under the stairway leading upstairs; and (3) a makeup bag in an upstairs bedroom that contained a large glass pipe with black residue that later tested positive for tetrahydrocannabinol and a baggie containing a white granular substance that later tested positive for methamphetamine.

The officers arrested Keel and Wulf. At the time of her arrest, Wulf admitted that the makeup bag belonged to her but claimed that the methamphetamine found inside it did not, stating that she would take responsibility for the "smoke" but not the "dope." Wulf later confirmed that "smoke" was a reference to marijuana and "dope" was a reference to methamphetamine.

Keel was charged with one count each of possession of cocaine, possession of methamphetamine, and possession of drug paraphernalia. The cocaine charge was dismissed prior to trial.

At trial, Wulf testified on Keel's behalf. Contrary to her prior statement, Wulf testified that all the drugs and drug paraphernalia found in the residence belonged to her and that Keel had no knowledge of or control over any of the items. Wulf explained to the jury that she had been afraid at the time of her arrest to admit that all the contraband, including the methamphetamine, belonged to her because she "didn't want to take a charge for something so big." Notably, Wulf testified that the glass pipe discovered on the shelf in the room where Keel was discovered was used to smoke methamphetamine and the black plastic bong found in the closet under-

neath the stairway and the large glass pipe found in the makeup bag upstairs were both used to smoke marijuana.

Despite Wulf's testimony, the jury found Keel guilty of possession of methamphetamine and possession of drug paraphernalia.

Prior to Keel's sentencing, a presentence investigation (PSI) report was prepared showing that on January 5, 1993 (before the enactment of the KSGA on July 1, 1993), Keel was convicted of attempted aggravated robbery and aggravated robbery. Both of these convictions were classified as person felonies, resulting in Keel having a criminal history score of B. See K.S.A. 21-4709.

At sentencing, Keel did not raise an objection to his criminal history score and personally stipulated to the existence of the convictions listed in the criminal history worksheet attached to the PSI report. The district court sentenced Keel to concurrent sentences of 34 months' imprisonment for possession of methamphetamine and 1 year in jail for possession of drug paraphernalia.

More facts will be stated as they become pertinent to the issues discussed below.

### SUFFICIENCY OF THE EVIDENCE

Before the Court of Appeals, Keel challenged the sufficiency of the evidence supporting his convictions, claiming that the State failed to prove he had knowledge of or intended to possess the drugs and drug paraphernalia found inside the house he shared with Wulf.

*Standard of Review*

When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. *State v. McCaslin*, 291 Kan. 697, Syl. ¶ 8, 245 P.3d 1030 (2011), *overruled on other grounds by State v. Astorga*, 299 Kan. 395, 324 P.3d 1046 (2014). Furthermore, this court has recognized that there is no distinction between

direct and circumstantial evidence in terms of probative value. *State v. Evans*, 275 Kan. 95, 105, 62 P.3d 220 (2003). "A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference." *McCaslin*, 291 Kan. 697, Syl. ¶ 9.

*Analysis*

Keel was charged with possession of methamphetamine and possession of drug paraphernalia. Kansas law provides that "[i]t shall be unlawful for any person to possess any opiates, opium or narcotic drugs." K.S.A. 2009 Supp. 21-36a06(a). Similarly, K.S.A. 2009 Supp. 21-36a09(b)(2) prohibits the possession of drug paraphernalia for personal use. This court has held that

"possession of a controlled substance requires specific intent to exercise control over the substance, with knowledge of the nature of the substance. [Citation omitted.] The possession of a controlled substance may be immediate and exclusive, jointly held with another, or constructive as where the drug is kept by the accused in a place to which he has some measure of access and right of control. [Citation omitted.] Proof of the required elements for possession of a controlled substance may be established by circumstantial evidence. [Citations omitted.]" *State v. Washington*, 244 Kan. 652, 654, 772 P.2d 768 (1989).

Keel relies mainly on *State v. Cruz*, 15 Kan. App. 2d 476, 489, 809 P.2d 1233, *rev. denied* 249 Kan. 777 (1991), to support his argument. In *Cruz*, the Court of Appeals reversed the defendant's conviction for possession of cocaine with intent to sell, holding that the evidence presented did not support the conviction. 15 Kan. App. 2d at 492. The *Cruz* court noted that in cases where a defendant does not have exclusive control of the premises upon which drugs are found, "more than mere presence or access to the drugs has been required to sustain a conviction." 15 Kan. App. 2d at 489. The court held that in such cases, other incriminating circumstances must link the defendant to the drugs. Incriminating factors include the following: (1) the defendant's previous sale or use of narcotics; (2) the defendant's proximity to the area in which the drugs were found; (3) the fact that the drugs were found in plain

view; and (4) the defendant's incriminating statements or suspicious behavior. 15 Kan. App. 2d at 489.

Like Keel did before the Court of Appeals, he argues the State failed to come forward with conclusive evidence of any of the factors listed in *Cruz*. Specifically, Keel argues there was no evidence presented to establish his previous involvement in any drug sale or use, only the glass pipe was found in close proximity to him, just one baggie of methamphetamine was found in plain view, and the only suspicious behavior was Wulf telling the officers that Keel was not home. In addition, Keel argues there was evidence presented at trial that should have prompted reasonable doubt in the minds of the jury: Wulf's testimony at trial that none of the drugs or paraphernalia belonged to Keel and the State's failure to test any of the drugs or paraphernalia for fingerprints.

The Court of Appeals rejected Keel's argument, reasoning that

"[n]ot only was the glass pipe containing methamphetamine residue on the shelf in the 'hidden entryway' found in close proximity to Keel, but the baggie of methamphetamine was discovered in plain view on a desk near the entrance to the hidden room. Additionally, Keel's attempt to avoid discovery by burrowing away in a hidden room containing surveillance equipment certainly qualifies as suspicious behavior. Finally, the jury was able to assess Wulf's credibility and weigh her testimony at trial in light of the evidence that she had initially denied ownership of the methamphetamine. The fact that the jury convicted Keel reflects the jury's decision to believe the statement made by Wulf at the time she was arrested and reject the testimony she provided later at trial. It is not the function of an appellate court to reweigh the evidence or pass on the credibility of witnesses. [Citation omitted.]

"Although Keel lacked exclusive control over the residence, when the evidence is viewed in the light most favorable to the State, we find other incriminating evidence that sufficiently linked Keel to the drugs and drug paraphernalia found inside. As such, there was sufficient evidence presented from which a rational factfinder could find Keel was in constructive possession of the drugs and drug paraphernalia." *Keel*, 2012 WL 4373012, at °3.

We have nothing more to add; the panel's analysis regarding the sufficiency of the evidence is sound. We conclude that the State presented sufficient evidence to convict Keel of possession of methamphetamine and possession of drug paraphernalia.

## Jury Instruction on Drug Paraphernalia

As noted above, the residential search turned up a glass pipe, a bong, and a bag containing pipes. Keel's defense was that the items belonged to Wulf, not him.

Keel complains on appeal that an instruction on drug paraphernalia improperly invaded the province of the jury by directing the jury to find that a pipe or bong constitutes drug paraphernalia. Keel did not object to the proposed instructions at trial, and the standard of review is therefore based on clear error. See K.S.A. 22-3414(3); *State v. Smith-Parker*, 301 Kan. 132, 163, 340 P.3d 485 (2014).

Jury Instruction No. 3 reads:

" 'Drug paraphernalia' means all equipment, products and materials of any kind which are used or intended for use in ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of the uniform controlled substances act. 'Drug paraphernalia' shall include, but is not limited to:

"(1) Pipes,

"(2) Bongs."

The instruction closely tracked K.S.A. 2009 Supp. 21-36a01(f), which included pipes and bongs in the definition of drug paraphernalia. See K.S.A. 2009 Supp. 21-36a01(f)(12)(A)-(C), (G)-(J), (L), and (N). It also closely tracked PIK Crim. 3d 67.40—now PIK Crim. 4th 57.180.

Keel contends on appeal that this instruction is clearly erroneous because it required the jury to find that pipes and bongs were drug paraphernalia.

Read in isolation, the last sentence of Instruction No. 3 may indeed have suggested to the jury that it was required to find that the pipes and bong were drug paraphernalia. Instruction No. 3 was not, however, the only instruction given to the jury on the subject of drug paraphernalia.

Jury Instruction No. 2 reads:

"The defendant is charged with the crime of unlawfully possessing with the intent to use drug paraphernalia. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1.   That the defendant intentionally possessed drug paraphernalia to use to ingest, inhale or otherwise introduce into the human body methamphetamine and/or marijuana; and

"2. That this act occurred on or about the 14th day of May, 2010, in Mc-Pherson, [*sic*] County, Kansas."

Jury Instruction No. 4 reads:

"In determining whether an object is drug paraphernalia, you shall consider, in addition to all other logically relevant factors, the following:

"Statements by a person in control of the object concerning its use.

"The proximity of the object, in time and space, to a direct violation of the uniform controlled substances act.

"The proximity of the object to controlled substances.

"The existence of any residue of controlled substances."

Both Instructions Nos. 2 and 4 informed the jury that it had to find that the defendant was using the pipes and/or bong as accessories to illegal drug consumption. In the context of those instructions, Instruction No. 3 simply defined which objects the State was including in its accusation of possessing drug paraphernalia. Even that instruction specified that the items must be "used or intended for use in ingesting, inhaling or otherwise introducing into the human body a controlled substance . . . ." Reading the instructions as a whole, they informed the jury that it had to do more than simply find that Keel was the possessor of a bong and/or pipes; it had to find that he was using or intended to use the items as paraphernalia facilitating the intake of controlled substances.

This court addressed a nearly identical argument with respect to a drug paraphernalia instruction in *State v. Sisson*, 302 Kan. 123, 351 P. 3d 1235 (2015). In *Sisson*, this court approved similar instructions regarding scales used as drug paraphernalia. The court pointed out that instructions are to be considered together as a whole, without isolating any one instruction. 302 Kan. 123, Syl. ¶ 5. One phrase in a jury instruction does not warrant reversal when the instructions, read in their entirety, properly state the law. 302 Kan. 123, Syl. ¶ 5.

Wulf testified that one pipe was used for smoking methamphetamine and the bong and another pipe were both used to smoke marijuana. The jury had before it compelling evidence that the items were used for illegal purposes. The instructions given track the statutory language and accurately state the law. In conformity with *Sisson*, we find no error here.

## CLASSIFICATION OF PRIOR CONVICTIONS

After this court granted Keel's petition for review, he filed a motion to correct an illegal sentence pursuant to K.S.A. 22-3504(1). Keel contends that this court's recent decision in *Murdock*, 299 Kan. 312, dictates that his pre-KSGA convictions for attempted aggravated robbery and aggravated robbery, even though they occurred in Kansas rather than another state, be classified as nonperson crimes under K.S.A. 21-4710(d)(8), because neither crime had a person/nonperson classification assigned to it when he committed it.

At sentencing, Keel did not raise an objection to his criminal history score and personally stipulated to the existence of all of the convictions listed in his PSI report. Recently, we held in *Dickey*, 301 Kan. 1018, Syl. ¶¶ 3-4, that such actions or inactions do not bar a defendant from appealing the legal effect of prior convictions upon the calculation of his or her criminal history score. We stated:

"A defendant's stipulation or failure to object at sentencing to the convictions listed in his or her presentence investigation report may prevent the defendant later challenging the existence of the convictions listed in the report. But a stipulation or lack of an objection at sentencing will not prevent the defendant from raising a subsequent challenge under K.S.A. 22-3504(1) regarding the legal effect of his or her prior convictions [*i.e.*, how those convictions should be classified and counted for the purpose of determining the defendant's criminal history score]." 301 Kan. 1018, Syl. ¶ 4.

In conformity with *Dickey*, we conclude that Keel's challenge to the classification of his pre-KSGA Kansas convictions—essentially, a challenge to the resulting criminal history score used to sentence him for his current convictions—is properly before this court pursuant to K.S.A. 22-3504(1).

### *Standard of Review*

Whether a prior conviction should be classified as a person or nonperson offense involves the interpretation of the KSGA. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12, *cert. denied* 135 S. Ct. 91 (2014); see also *Makthepharak v. State*, 298 Kan. 573, 578, 314 P.3d 876 (2013) (whether a sen-

tence is illegal within the meaning of K.S.A. 22-3504(1) is a question of law over which this court has unlimited review).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). While criminal statutes are generally strictly construed against the State, this principle is subordinate to the rule that judicial interpretation must be reasonable and sensible to effectuate the legislative design and the true intent of the law. *State v. Phillips*, 299 Kan. 479, 495, 325 P.3d 1095 (2014). In *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010), we stated:

"An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. [Citation omitted.] When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. *Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history or other background considerations to construe the legislature's intent.* [Citation omitted.]" (Emphasis added.)

*Analysis*

We start out by acknowledging that there is no explicit language in the KSGA telling courts precisely how to classify in-state or out-of-state pre-KSGA convictions or juvenile adjudications as person or nonperson offenses for criminal history purposes. This means we cannot merely interpret text whose meaning and effect are plain. See, *e.g.*, *Vontress v. State*, 299 Kan. 607, 611, 325 P.3d 1114 (2014) (no need to resort to statutory construction when language plain, unambiguous; appellate court interprets language as it appears). This also is not a situation in which there is an unclear or ambiguous statutory provision obviously meant to control the issue before us. In such circumstances, we routinely move from statutory interpretation to statutory construction. See, *e.g.*, *State v. Hobbs*, 301 Kan. 203, 207, 340 P.3d 1179 (2015). And we have often recited that construction moves beyond text to divine legislative intent, employing legal canons and examining legislative history and other background considerations. See, *e.g.*, *Hobbs*, 301 Kan. at 207.

Here, in this unique circumstance, we are neither interpreting plain language nor construing ambiguous language according to the clues of legislative intent. Rather, we must interpret the entire Act, looking to the overall design and purposes of the KSGA and construing the Act according to its spirit and reason in order to determine whether the omission at issue is a reasonable indication that the matter excluded is irrelevant to the statutory scheme and the legislative intent, or whether the omission is actually a "silence gap" that undermines—and introduces ambiguity into—other aspects of the Act. In the latter circumstance, courts are ill-equipped to fill such a gap. Often, the wisest course is for courts to defer to the legislature to act to fill such a gap. See, *e.g.*, *Eastman v. Coffeyville Resources Refining & Marketing* 295 Kan. 470, 476, 284 P.3d 1049 (2012); *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 464-65, 228 P.3d 403 (2010). In fact, this may fairly be characterized as this court's default position. In more rare circumstances, this court has looked to common law predating codification to fill a statutory silence. See *State v. Quested*, 302 Kan. 262, 270, 352 P.3d 553, (2015).

Neither of these approaches seems wisest here. Waiting for litigation to interpret or construe and then demarcate appropriate application of the legislature's 2015 amendment is, at best, impractical. At worst, it may be at least temporarily destructive of the KSGA's purpose of consistent sentencing that differentiates between offenders along lines that matter, for example, between those with and without violent histories. Turning to preexisting common law also is not helpful, as there was no such thing as sentencing classifications for person and nonperson crimes at common law.

In this case, however, given the overall design and structure of the KSGA, we have determined that the legislature's failure to include a specific provision describing how to score prior pre-KSGA in-state convictions or juvenile adjudications is inconsequential. The provisions of the KSGA itself as explained below instructed that prior convictions or adjudications be classified at the time of the current crime of conviction. In reaching this conclusion, we are mindful that when construing statutes to determine

legislative intent, appellate courts must consider various provisions of an act in pari materia, with a view toward reconciling and bringing the provisions into workable harmony if possible. *State v. Coman*, 294 Kan. 84, 93, 273 P.3d 701 (2012). We also "construe statutes in such a way as to avoid unreasonable results, and we presume that the legislature does not intend to enact meaningless or redundant legislation." *State v. Turner*, 293 Kan. 1085, 1088, 272 P.3d 19 (2012).

This court has recognized that the principal purpose in enacting the KSGA was " 'to standardize sentences so that similarly situated offenders would be treated the same, thus limiting the effects of racial and geographic bias.' " *State v. Paul*, 285 Kan. 658, 667, 175 P.3d 840 (2008) (quoting *State v. Bandy*, 25 Kan. App. 2d 696, 699, 971 P.2d 749 [1998], *rev. denied* 266 Kan. 1110 [1999]). The sentencing guidelines attempt to accomplish this goal by applying two controlling factors to determine an offender's sentence for a felony conviction: the severity level of the current crime of conviction and the offender's criminal history score, which represents the number and severity of the offender's prior convictions and/or juvenile adjudications. See K.S.A. 2009 Supp. 21-4704(c) and (d); K.S.A. 21-4709. K.S.A. 21-4710(a) defines "prior conviction" as

"any conviction, other than another count in the current case which was brought in the same information or complaint or which was joined for trial with other counts in the current case pursuant to K.S.A. 22-3203 and amendments thereto, which occurred prior to sentencing in the current case regardless of whether the offense that led to the prior conviction occurred before or after the current offense or the conviction in the current case."

In scoring prior convictions and juvenile adjudications for purposes of determining an offender's criminal history score, a distinction is made between prior felony and misdemeanor convictions or adjudications as well as whether those convictions or adjudications constitute "person" or "nonperson" offenses. See K.S.A. 21-4709. Upon implementation of the KSGA, the legislature added person and nonperson language to most criminal statutes defining crimes. Generally, the legislature designated a crime as a person offense if the crime inflicted or could inflict physical or emotional harm to another. See, *e.g.*, K.S.A. 21-3403 (classifying

voluntary manslaughter as a "severity level 3, person felony"); K.S.A. 21-3409(b) (classifying assault of a law enforcement officer as a "class A person misdemeanor"). In contrast, crimes that inflicted or could inflict damage to property were generally designated nonperson offenses. See, *e.g.*, K.S.A. 21-3703 (classifying theft of mislaid property as a "class A nonperson misdemeanor"); K.S.A. 21-3710(b)(1) (classifying forgery as a "severity level 8, nonperson felony"); *State v. Fifer*, 20 Kan. App. 2d 12, 15, 881 P.2d 589, *rev. denied* 256 Kan. 996 (1994); Kansas Sentencing Guidelines, Desk Reference Manual, p. 37 (2014). In some instances, the legislature has altered the person/nonperson designation to reflect a different view regarding a particular crime's severity and impact. See *State v. Williams*, 291 Kan. 554, 557, 244 P.3d 667 (2010) (recognizing legislature's reclassification of identity theft from person to nonperson offense); *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003) (recognizing legislature's reclassification of lewd and lascivious behavior from nonperson to person offense), *overruled in part by State v. Dickey*, 301 Kan. 1018, Syl. ¶ 4, 350 P.3d 1054 (2015). In most cases, person crimes are weighted more heavily than nonperson crimes in determining an offender's criminal history score. See K.S.A. 21-4709.

After implementation of the KSGA, a crime which the legislature simply declared to be either a felony or misdemeanor without designating it a person or nonperson offense is considered "unclassified" and scored as a nonperson offense for criminal history purposes. See K.S.A. 21-4710(d)(8) ("Unless otherwise provided by law, unclassified felonies and misdemeanors, [*sic*] shall be considered and scored as nonperson crimes for the purpose of determining criminal history."); *State v. Murdock*, 299 Kan. 312, 318, 323 P.3d 846 (2014), *modified* by Supreme Court order September 19, 2014 ("It is likely K.S.A. 21-4710[d][8] was adopted to address the scoring of a very limited number of current criminal statutes that do not categorize the crimes as person or nonperson offenses."); K.S.A. 8-113 (crime of altering a vehicle identification number is classified as a "felony"); K.S.A. 8-113a (an operator of a parking garage who fails to report an unclaimed vehicle is guilty of a "misdemeanor"); K.S.A. 21-4213 (unlawful failure to report a wound is

a "class C misdemeanor"); K.S.A. 79-5208 (failure to affix drug tax stamp is a "severity level 10 felony").

Before the KSGA was implemented on July 1, 1993, crimes in Kansas were classified solely for purposes of imposing an indeterminate sentencing range for a particular level of felony or misdemeanor. See K.S.A. 21-4501 (detailing classes of felonies and prescribed terms of imprisonment); K.S.A. 21-4502 (detailing classes of misdemeanors and prescribed jail terms). But, with the advent of the sentencing guidelines and their use of a crime's severity level and an offender's criminal history to determine a specific presumptive sentence for that offender, the language of most criminal statutes was amended to reflect this change in sentencing.

When the KSGA was implemented, it included the following provisions within K.S.A. 1993 Supp. 21-4710 for classifying prior convictions and juvenile adjudications for purposes of determining an offender's criminal history:

"(a) Criminal history categories contained in the sentencing guidelines grid for nondrug crimes and the sentencing guidelines grid for drug crimes are based on the following types of prior convictions: *Person felony adult convictions*, nonperson felony adult convictions, *person felony juvenile adjudications*, nonperson felony juvenile adjudications, *person class A misdemeanor adult convictions*, nonperson class A misdemeanor adult convictions, *person class A misdemeanor juvenile adjudications*, nonperson class A misdemeanor juvenile adjudications, *person class B misdemeanor adult* convictions, select class B nonperson misdemeanor adult convictions, *person class B misdemeanor* juvenile adjudications and select class B nonperson misdemeanor juvenile adjudications.

. . . .

"(d) The following are applicable to determining an offender's criminal history classification:

(1) Only verified convictions will be considered and scored.

(2) *All prior adult felony convictions, including expungements, will be considered and scored.*

(3) *There will be no decay factor applicable for adult convictions.*

(4) Except as otherwise provided, a juvenile adjudication, which would have been a *nonperson class D or E felony if committed before July 1, 1993*, or a nondrug level 6, 7, 8, 9 or 10, or drug level 4, *nonperson felony* if committed on or after July 1, 1993, or a misdemeanor if committed by an adult, will decay if the current crime of conviction is committed after the offender reaches the age of 25.

(5) *For convictions of crimes committed before July 1, 1993, a juvenile adjudication which would constitute a class A, B or C felony, if committed by an adult,*

*will not decay.* For convictions of crimes committed on or after July 1, 1993, a juvenile adjudication which would constitute an off-grid felony, a nondrug severity level 1, 2, 3, 4 or 5 felony, or a drug severity level 1, 2 or 3 felony, if committed by an adult, will not decay.

(6) *All juvenile adjudications which would constitute a person felony will not decay or be forgiven.*

(7) All class A misdemeanor convictions, class B person misdemeanors and class B select nonperson misdemeanors shall be considered and scored. Class C misdemeanors will not be considered and scored.

(8) Unless otherwise provided by law, unclassified felonies and class A and B misdemeanors, shall be considered and scored as nonperson crimes for the purpose of determining criminal history.

(9) *Prior convictions of a crime defined by a statute which has since been repealed shall be scored using the classification assigned at the time of such conviction.*" (Emphasis added.)

See also K.S.A. 21-4711(f) (except as provided in subsections [4], [5] and [6] of K.S.A. 21-4710 and amendments thereto, for purposes of determining an offender's criminal history score, "juvenile adjudications will be applied in the same manner as adult convictions.").

The language of K.S.A. 1993 Supp. 21-4710 indicates that *all* prior convictions and/or juvenile adjudications (except as provided in subsection [d][4] and [d][7]) occurring before July 1, 1993, were to be considered and scored for criminal history purposes in order to properly sentence an offender for a current crime of conviction under the KSGA. Despite the lack of explicit person/nonperson designations for pre-KSGA crimes, the legislature clearly contemplated that such crimes would be scored (*i.e.*, classified) as a particular type of prior conviction as listed in K.S.A. 1993 Supp. 21-4710(a). The classifications include, among others, person felony adult convictions, person felony juvenile adjudications, person class A misdemeanor adult convictions, person class A misdemeanor juvenile adjudications, person class B misdemeanor adult convictions, and person class B misdemeanor juvenile adjudications. See K.S.A. 1993 Supp. 21-4710(a). In other words, the language of K.S.A. 1993 Supp. 21-4710(a) shows that the legislature recognized that a pre-KSGA conviction and/or adjudication could be classified as a more serious person offense if such a classification was proper.

Further support for this conclusion comes from subsections (d)(4), (5), and (6) of K.S.A. 1993 Supp. 21-4710, which address, among other things, the issue of how to classify pre-KSGA juvenile adjudications for criminal history purposes. The language of each subsection shows that this determination turns primarily on whether the crime of adjudication was subsequently considered a person offense after implementation of the KSGA. Subsection (d)(4) states that "a juvenile adjudication, which would have been a *nonperson class D or E felony if committed before July 1, 1993* . . . will decay if the current crime of conviction is committed after the offender reaches the age of 25." (Emphasis added.) K.S.A. 1993 Supp. 21-4710(d)(4). The italicized language is significant because, as mentioned above, prior to July 1, 1993, a crime was not classified as a person or nonperson offense but merely identified with a letter signifying its severity level (*e.g.*, class D felony). Thus the language conveys that a comparison between pre-KSGA and post-KSGA criminal statutes must take place in order to determine whether a juvenile adjudication for a class D or E felony committed before July 1, 1993, will be counted and scored for criminal history purposes. If such a crime was reclassified as a nonperson offense after implementation of the KSGA, then an adjudication for that crime would decay (*i.e.*, not be counted) on the offender's criminal history record if the current crime of conviction was committed after the offender attained the age of 25. Accordingly, a 1988 juvenile adjudication for making a false writing would be eligible for decay because, at the time the crime was committed, it was classified as a class D felony and, after implementation of the KSGA, was reclassified as a nonperson felony. Compare K.S.A. 21-3711 (Ensley 1988) with K.S.A. 21-3711. Conversely, a pre-KSGA juvenile adjudication for a class D felony that was reclassified as a person felony after implementation of the KSGA does not decay. Thus a 1988 juvenile adjudication for involuntary manslaughter will be considered and scored for criminal history purposes. Compare K.S.A. 21-3404(c) (Ensley 1988) (classifying involuntary manslaughter as a class D felony) with K.S.A. 21-3404 (classifying involuntary manslaughter as a person felony).

Similarly, subsection (d)(5) of K.S.A. 1993 Supp. 21-4710 states that a juvenile adjudication occurring prior to July 1, 1993, for a crime which would constitute a class A, B, or C felony if committed by an adult will not decay on an offender's criminal record. The apparent reason for this is that after implementation of the KSGA, most class A, B, and C felonies—crimes that the legislature deemed the most serious—were reclassified as person felonies. See Kansas Sentencing Guidelines, Desk Reference Manual, Appendix A1 (1993). Thus, juvenile adjudications for class A, B, or C felonies are treated the same for criminal history purposes as juvenile adjudications for class D and E felonies that were later reclassified as person felonies after implementation of the KSGA. Subsection (d)(6) of the statute reinforces this rule by stating: "All juvenile adjudications *which would constitute a person felony* will not decay or be forgiven." (Emphasis added.) K.S.A. 1993 Supp. 21-4710(d)(6).

The treatment of prior adult misdemeanor convictions under K.S.A. 21-4710 also indicates that the legislature intended for pre-KSGA statutes to be compared to their post-KSGA equivalents in order to determine how pre-KSGA misdemeanor convictions should be classified for criminal history purposes. Subsection (d)(7), amended in 1994, now states: "All person misdemeanors, class A nonperson misdemeanors and class B select nonperson misdemeanors, and all municipal ordinance and county resolution violations comparable to such misdemeanors, shall be considered and scored." K.S.A. 21-4710(d)(7). In order to implement this command, comparable statutes must be consulted. Accordingly, a 1988 adult conviction for battery would be considered and scored for criminal history purposes because, at the time the crime was committed, it was classified as a class B misdemeanor but later reclassified as a class B *person* misdemeanor upon implementation of the KSGA. Compare K.S.A. 21-3412 (Ensley 1988) with K.S.A. 21-3412(b). Conversely, a 1988 adult conviction for prostitution would not be considered or scored for criminal history purposes because, at the time the crime was committed, it was classified as a class B misdemeanor but later reclassified as a class B *nonperson*

misdemeanor upon implementation of the guidelines. Compare K.S.A. 21-3512(2) (Ensley 1988) with K.S.A. 21-3512(b).

And finally under K.S.A. 21-4710, subsection (d)(9) states: "Prior convictions of a crime defined by a statute which has since been repealed shall be scored using the classification assigned at the time of such conviction." The clear implication is that if the statute has not been repealed, then the crime is scored using the classification in the statute at the time of the current crime of conviction. Most prior in-state convictions continued to exist under the same statute that remained after the adoption of the KSGA. In the less common circumstance when a criminal statute had been repealed post-KSGA, the legislature envisioned this possibility and provided direction. When the statute under which the prior conviction was obtained was still in effect, the structure of the KSGA, as just previously described, simply pointed the court to that statute to determine how to designate the prior conviction.

The theme of comparing analogous pre-KSGA and post-KSGA criminal statutes for purposes of classifying a pre-KSGA conviction or adjudication for criminal history purposes also echoes in the language of K.S.A. 21-4711(e), the language of which has remained the same since it was implemented in July 1993. The statute, addressing the issue of how to classify out-of-state convictions and juvenile adjudications, states:

"Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history. An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction. If a crime is a felony in another state, it will be counted as a felony in Kansas. *The state of Kansas shall classify the crime as person or nonperson. In designating a crime as person or nonperson comparable offenses shall be referred to.* If the state of Kansas does not have a comparable offense, the out-of-state conviction shall be classified as a nonperson crime." (Emphasis added.) K.S.A. 21-4711(e).

Again, the designation of crimes in Kansas as either person or nonperson offenses did not exist prior to the implementation of the KSGA. Upon implementation of the KSGA, however, the legislature added language to most criminal statutes in order to designate crimes as either person or nonperson offenses. Based on this history, which the legislature must have been aware of when it

enacted the KSGA, the import of the above italicized language is that, regardless of when a prior out-of-state conviction or juvenile adjudication took place (*i.e.*, before or after July 1, 1993), the out-of-state conviction or adjudication is classified to match the comparable *post-KSGA* criminal statute. If no comparable post-KSGA criminal statute exists, then the out-of-state conviction or adjudication must be classified as a nonperson offense.

The above in pari materia analysis of the various provisions of the KSGA shows that, except as specifically stated otherwise, the legislature intended for all prior convictions and juvenile adjudications—including convictions and adjudications occurring before implementation of the KSGA—to be considered and scored for purposes of determining an offender's criminal history score. In order to do this, a pre-KSGA conviction and/or adjudication must be classified as either a person or nonperson offense by comparing the criminal statute under which the prior offense arose to the comparable post-KSGA criminal statute. As we explain below, the comparable post-KSGA criminal statute is the one that was in effect at the time the current crime of conviction was committed.

It is at this last point where today's decision departs from the majority decision in *Murdock* and from the *Williams* decision upon which it relied. See *Murdock*, 299 Kan. at 315 (citing *Williams*, 291 Kan. 554, Syl. ¶ 4). The issue in *Murdock* was how to classify two Illinois robbery convictions from 1984 and 1990 for criminal history purposes. The majority in *Murdock* acknowledged the rule in K.S.A. 21-4711(e) that, in classifying a prior out-of-state conviction as person or nonperson, "comparable [in-state] offenses shall be referred to." Then, relying on *Williams*, 291 Kan. at 560, the majority concluded that the comparable in-state offense for purposes of classifying the prior convictions was the Kansas robbery statute in effect when the defendant committed his Illinois crimes. *Murdock*, 299 Kan. at 317. Needless to say, this pre-KSGA criminal statute did not designate robbery as a person or nonperson offense; it merely classified the crime as a class C felony. See K.S.A. 21-3426 (Ensley 1981, 1988). Based on the lack of a person/nonperson designation within the statute, the *Murdock* majority concluded that the pre-KSGA crime of robbery must qualify as an unclassified

felony. Then, relying at least in part on what it conceded was a questionable application of K.S.A. 21-4710(d)(8), it concluded that the defendant's two Illinois robbery convictions had to be scored as nonperson offenses for purposes of determining his criminal history score. *Murdock*, 299 Kan. at 318-19.

*Williams*, the case that dictated *Murdock's* holding, attempted to distinguish our earlier opinion in *Vandervort*, 276 Kan. at 174, which had held that the comparable Kansas offense for the purpose of choosing a person or nonperson designation for prior Virginia convictions was the version in effect at the time of the current crime of conviction. *Vandervort*, as further discussed below, did involve a further complication: The comparable Kansas statute's person and nonperson designation had changed during the time since implementation of the KSGA and, more specifically, had changed during the time period that the string of sex crimes underlying the defendant's current convictions occurred. See 276 Kan. at 174. Our re-examination of *Williams* today leads us to believe that its departure from *Vandervort* was a mistake and that it led to an unintended emasculation of the established sentencing rule that the penalty parameters for an offense are fixed on the date the offense was committed. See *State v. Sylva*, 248 Kan. 118, 120-21, 804 P.2d 967 (1991).

In *Williams*, the defendant pled guilty in separate cases to two counts of identity theft committed in 2005 and 2006. Her criminal history included five Washington state felony convictions for identity theft committed between December 2001 and September 2002. At the time the Washington crimes were committed, Kansas classified identity theft as a person offense. And, at the time the defendant committed her 2005 identity theft crime, the crime remained a person offense. But, by the time the defendant committed identity theft in 2006, Kansas had reclassified the crime as a nonperson offense. See 291 Kan. at 556-57.

The parties in *Williams* agreed that for purposes of classifying the prior Washington convictions, Kansas' identity theft statute was the comparable offense. See K.S.A. 21-4711(e) ("An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction. . . . The state of Kansas shall

classify the crime as person or nonperson. In designating a crime as person or nonperson comparable offenses shall be referred to."). But the parties disagreed as to which version of the statute was the comparable statute: (1) the version in effect when the defendant committed the Washington crimes, (2) the versions in effect when the defendant committed her current Kansas crimes, or (3) the version in effect on the date of the defendant's sentencing for her current Kansas crimes.

Contrary to its current position, in *Williams* the State argued in both its brief and before this court at oral argument that the person/nonperson designation should be determined based on the law in effect on the date the prior crimes were committed—a holding that would designate both of Williams' prior offenses as person felonies, resulting in a longer prison sentence for her current Kansas offense. Williams argued that her prior convictions should be classified based on the Kansas statute in effect when the current in-state crimes were committed. Accordingly, for purposes of calculating the defendant's criminal history score for sentencing on the 2005 identity theft crime, she contended that her prior Washington convictions should be classified as person felonies. For the 2006 identity theft crime, she argued that her prior Washington convictions should be classified as nonperson felonies.

Williams supported the classification rule she was advocating by citing *Vandervort*. In that case, the defendant was convicted of two counts of rape, one count of attempted rape, three counts of criminal sodomy, and seven counts of aggravated indecent liberties with a child. The State had alleged that these crimes occurred in Kansas between November 1996 and September 17, 2000. The defendant's criminal history included a 1980 Virginia conviction for exposure, which was scored as a person felony and contributed to the defendant having a criminal history score of B. Vandervort argued that the exposure conviction should have been classified as a nonperson felony, making his criminal history score a C.

In *State v. Vandervort*, 276 Kan. 164, 72 P.3d 925 (2003), *overruled in part by State v. Dickey*, 301 Kan. 1018, Syl. ¶ 4, 350 P.3d 1054 (2015), the court determined that the comparable offense to the 1980 Virginia exposure conviction was K.S.A. 2002 Supp. 21-

3508 (lewd and lascivious behavior). 276 Kan. at 178-79. K.S.A. 21-3508 was codified in 1969 and classified lewd and lascivious behavior as a class B misdemeanor. K.S.A. 1969 Supp. 21-3508. With the enactment of the KSGA, language was added to K.S.A. 21-3508 to designate lewd and lascivious behavior as a class B *nonperson* misdemeanor. See K.S.A. 1993 Supp. 21-3508. The offense remained a class B nonperson misdemeanor until July 1, 1998, when the statute was amended to classify lewd and lascivious behavior with a person under 16 years of age as a severity level 9 *person* felony. Lewd and lascivious behavior with a person over 16 years of age remained a class B nonperson misdemeanor. See K.S.A. 1998 Supp. 21-3508(b)(1) and (2). Thus the 1998 amendment occurred during the window of time when the defendant committed his current crimes.

As summarized by the *Vandervort* court, the defendant argued that

"since it is unclear when the acts occurred giving rise to his convictions in this case, the jury could have convicted him for acts that occurred at any time during the period between November 6, 1996, and September 17, 2000, reflected in the charging documents. [Defendant] argues that since K.S.A. 2002 Supp. 21-3508 [lewd and lascivious behavior] was classified as a nonperson misdemeanor prior to July 1, 1998, and *since the penalty imposed must agree with the provisions in effect at the time the offense was committed, he should be sentenced under the lower criminal history.*" (Emphasis added.) 276 Kan. at 179.

In other words, the defendant was advocating for adoption of the following rule: The person/nonperson classification of a prior conviction is determined based on the classification in effect for the comparable Kansas offense when the current crime of conviction was committed.

The *Vandervort* court agreed with the defendant's argument, stating:

"[I]t is uncertain when the acts occurred which the jury relied upon to convict [the defendant of the current crimes]. Without that determination, [the defendant] may have been convicted for acts which occurred prior to July 1, 1998 [when lewd and lascivious behavior was classified as a nonperson misdemeanor]. The State charged [the defendant] with acts that occurred during a period between November 6, 1996, and September 17, 2000. The jury was instructed to consider this expansive period. With this uncertainty as to when each act relied upon by

the jury occurred, [the defendant] must be sentenced with the lower criminal history." 276 Kan. at 180.

Because it was possible that the defendant committed at least some of his current crimes of conviction prior to July 1, 1998, the *Vandervort* court held that the defendant's 1980 Virginia conviction for exposure had to be classified as a nonperson crime. K.S.A. 21-3508 classified the comparable lewd and lascivious offense as nonperson between November 1996 and July 1, 1998. Consequently, the court vacated the defendant's sentence and remanded his case for resentencing, with directions that his sentence be based on a criminal history score of C. 276 Kan. at 180. In support of this result, the *Vandervort* court quoted from *Sylva*, 248 Kan. at 121, which stated:

"Our rule that the penalty parameters for an offense are fixed as of the date of the commission of the offense is fair, logical and easy to apply. Neither the State nor a defendant may maneuver a sentencing date to take advantage of or avoid a change in a statute." 276 Kan. at 180.

In short, *Vandervort* stood for the proposition that a prior conviction should be classified for criminal history purposes based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed, and *State v. Williams*, 291 Kan. 554, 244 P.3d 667 (2010) did not fully acknowledge *Vandervort*'s application of this rule. Consequently, *Williams* failed to apply the rule to the classification issue before it. In describing *Vandervort*, the *Williams* court stated:

"The [*Vandervort*] opinion is not crystal clear. But the question of whether the 1998 version (level 9 person felony) or the 1969 version (Class B misdemeanor) of lewd and lascivious behavior was the comparable offense to the 1980 Virginia conviction—because of the date of the commission of the new Kansas offenses— simply was not answered by the court. The *Vandervort* court instead narrowed its focus to the events that occurred in Kansas between 1996 and 2000." 291 Kan. at 559.

This characterization of the classification issue before the *Vandervort* court led to a resolution contrary to the existing precedent. The concern in *Vandervort* was identifying the date of the current offenses for purposes of classifying a prior conviction in order to ascertain the defendant's criminal history score. As discussed

above, the *Vandervort* court determined that, because the defendant's current crimes could have occurred sometime between November 1996 and July 1, 1998, the defendant's 1980 Virginia conviction for exposure had to be classified as a nonperson crime based on the nonperson classification in effect for the comparable offense—lewd and lascivious behavior—between November 1996 and July 1, 1998. 276 Kan. at 179-80.

Because of the uncertainty as expressed in *Williams* regarding *Vandervort's* holding, the *Williams* court adopted the State's incorrect interpretation of *Vandervort* and, in turn, its claim that *Vandervort* actually supported the concept that a prior conviction should be classified as a person or nonperson offense based on the comparable Kansas statute in effect when the prior crime occurred. *Williams* stated:

"[T]he State contends *Vandervort* actually supports its position. It argues *Vandervort* stands for the general principle that sentencing " 'parameters for an offense are fixed as of the date of the commission of the offense.' " *Vandervort*, 276 Kan. at 180 (quoting *Sylva*, 248 Kan. at 121). According to the State, we should logically extend this general principle to the current scenario and score the Washington offenses for sentencing purposes according to their Kansas equivalents *when the Washington offenses were committed in 2001 and 2002.*" (Emphasis added.) 291 Kan. at 559.

Accepting this argument, the *Williams* court held that

"using the date of commission of the prior out-of-state crime to calculate the criminal history would be consistent with our fundamental rule of sentencing for a current in-state crime: sentencing in accordance with the penalty provisions in effect at the time the crime was committed. We additionally observe that having the penalty parameters for an offense " 'fixed as of the date of the commission of the offense is fair, logical and easy to apply.' " *Vandervort*, 276 Kan. at 180 (quoting *Sylva*, 248 Kan. at 121)." 291 Kan. at 560.

Consequently, the *Williams* court held that the defendant's prior Washington convictions for identity theft had to be classified as person offenses based on the classification in effect for the comparable Kansas offense when the Washington crimes were committed. 291 Kan. at 562.

*Williams* relied on the statement of law from *Vandervort* and *Sylva* (*i.e.*, penalty parameters for an offense are fixed as of the

date the offense was committed) as support for adopting the State's classification rule that a prior conviction should be classified based on the classification in effect when the prior crime was committed. But that statement of law from *Vandervort* and *Sylva* refers to sentencing for a *current* conviction and not the issue of how that same conviction should be classified for criminal history purposes if the defendant is convicted of another crime at a later date. This is evident from *Sylva*, which rejected the defendant's argument that two sentencing statutes, effective on July 1, 1989, should have been applied to him at sentencing for his *current* crimes of conviction—crimes he committed in March 1988. See *Sylva*, 248 Kan. at 119-21. *Williams'* application of *Vandervort* and *Sylva* to determine the classification of *prior convictions* is inaccurate because a current crime's person or nonperson designation has no bearing on determining the penalty parameters for that crime. The impact of the person/nonperson designation of a prior crime only comes into play in determining criminal history if an offender commits a new, subsequent crime.

The penalty parameters for a crime under the KSGA are established by the severity level of the current crime and the offender's criminal history score—determined by the number of prior convictions and/or juvenile adjudications and how they are classified. Because the "penalty parameters for a crime are fixed on the date the offense was committed," the *Vandervort* court logically concluded that the person/nonperson classification of a prior conviction must be based on the classification in effect for the comparable offense when the current crime was committed. The *Williams* decision strayed by (1) not fully recognizing *Vandervort's* holding and (2) by construing the "penalty parameters are fixed on the date the offense was committed" rule as dictating that a prior conviction's classification for criminal history purposes is forever set in stone by the classification in place when the prior crime was committed.

*Williams* did specifically consider and ultimately reject using the date of when the current crime was committed to determine the classification of a prior conviction. The court reasoned that doing so

"increases the risk that laws will change in the intervening years, further complicates calculations, and produces irregular results. [The defendant] admits that application of such a rule in the instant case results in one of [the defendant's] prior offenses scoring as a nonperson felony and another identical offense scoring as a person felony." 291 Kan. at 560.

This reasoning may appear to result in a less complicated means of determining the classification of a prior offense. However, using the date of the current crime removes the permanent effect of how prior crimes are treated for purposes of calculating criminal history, thereby providing a mechanism for sentences to reflect ever-evolving sentencing philosophies and correction goals.

For example, the legislature was motivated in 2005 to change the classification of identity theft, thereby reflecting a modern view regarding the severity of this particular crime. Utilizing the classification rule employed by *Williams* resulted in the defendant's prior Washington convictions for identity theft being classified as person felonies and the defendant, in turn, having a criminal history score A applied to the calculation of her sentences for both the 2005 and 2006 identity theft crimes. See *Williams*, 291 Kan. at 555-56, 562.

In comparison, under the classification rule established by *Vandervort* and now by *Keel*, Williams' Washington convictions would only have been classified as person felonies for purposes of sentencing on the 2005 identity theft crime. For the 2006 identity theft crime, the prior convictions would have been classified as nonperson felonies, since that classification was in effect when the 2006 crime was committed. Consequently, the defendant would have received a significantly lesser sentence for the 2006 crime based upon *Vandervort's* classification rule. See *Williams*, 291 Kan. at 558. Although classifying the prior convictions differently for the 2005 and 2006 crimes may seem like an "irregular result," it is a result that allows the imposition of a presumptive sentence that reflects the current viewpoint on the severity of identity theft.

Furthermore, classifying a prior conviction based on the classification in effect when the current crime was committed also treats similarly situated defendants in the same manner. For instance, if two defendants have the same or comparable convictions on their

criminal record and they both commit a new crime on the same date, then their prior convictions will be classified in the same manner—resulting in the same criminal history score for both defendants—regardless of when the prior convictions occurred (*e.g.*, before or after implementation of the KSGA). Thus, applying the *Vandervort* classification rule fulfills the principal purpose of the KSGA, which is to standardize sentences so that similarly situated offenders are treated the same. See *State v. Paul*, 285 Kan. 658, 667, 175 P.3d 840 (2008).

Finally, classifying a prior conviction or juvenile adjudication based on the classification in effect for the comparable offense when the current crime was committed complies with the Ex Post Facto Clause of the United States Constitution. See *Nichols v. United States*, 511 U.S. 738, 747, 114 S. Ct. 1921, 128 L. Ed. 2d 745 (1994) ("Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes that are commonplace in state criminal laws, *do not change the penalty imposed for the earlier conviction*. As pointed out in the dissenting opinion in *Baldasar* [*v. Illinois*, 446 U.S. 222, 232, 100 S. Ct. 1585, 64 L. Ed. 2d 169 (1962) (Powell, J., dissenting)], '[t]his Court consistently has sustained repeat-offender laws as penalizing *only the last offense committed by the defendant*. [Citations omitted.]' " [Emphasis added.]); *Beazell v. Ohio*, 269 U.S. 167, 169-70, 46 S. Ct. 68, 70 L. Ed. 216 (1925) ("[A]ny statute which . . . makes more burdensome the punishment for a crime, *after its commission*, . . . is prohibited as ex post facto." [Emphasis added.]); *State v. Overton*, 279 Kan. 547, 561, 112 P.3d 244 (2005) ("[T]he fundamental rule for sentencing is that the person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed.").

Based on the above analysis, we conclude that *Williams* was wrongly decided, and we hereby overrule it. Because the result reached in *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *modified* by Supreme Court order September 19, 2014, was dictated by *Williams*, we also overrule *Murdock*. Based on *Vandervort* and *Sylva*, the punishment for a current crime is set at the time

the crime is committed. Thus, the classification of a prior conviction or juvenile adjudication as a person or nonperson offense for criminal history purposes under the KSGA is determined based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed.

Applying this rule here dictates that Keel's pre-KSGA convictions for attempted aggravated robbery and aggravated robbery be classified as person felonies. When Keel committed his current crimes on May 14, 2010, attempted aggravated robbery and aggravated robbery were classified in Kansas as person felonies for criminal history purposes. See K.S.A. 21-3427 ("Aggravated robbery is a severity level 3, person felony."); K.S.A. 21-4711(g) ("A prior felony conviction of an attempt . . . to commit a crime shall be treated as a person or nonperson crime in accordance with the designation assigned to the underlying crime."). We therefore conclude that the district court properly classified these prior convictions as person felonies.

We note that the classification rule we apply today is consistent with the recent amendments the legislature made to K.S.A. 2014 Supp. 21-6810 (formerly K.S.A. 21-4710) and K.S.A. 2014 Supp. 21-6811 (formerly K.S.A. 21-4711) in response to the majority's decision in *Murdock*. See House Bill No. 2053, L. 2015, ch. 5, secs. 1 and 2 (effective April 2, 2015). The dissent would have us apply those amendments to the issues raised in this case. In support of its position, the dissent relies on *State v. Prine*, 297 Kan. 460, 303 P.3d 662 (2013) (*Prine II*), a case involving the application of an amended version of an evidentiary rule in Prine's subsequent retrial. In that case, we easily disposed of Prine's constitutional concerns, noting that statutory alteration of legal rules of evidence "generally do not violate the [Ex Post Facto] Clause"; " ' "do not attach criminality to any act previously done, and which was innocent when done; nor aggregate any crime theretofore committed; nor provide a greater punishment therefor than was prescribed . . . ." ' " *Prine*, 297 Kan. at 470.

Here, however, the question of whether the amended statute increases punishment is at the heart of the defendant's claim. And, unlike in *Prine II*, the amended statute was not in effect when

Keel's sentencing issues arose, and the issue was not addressed in district court, was not a part of the original appeal, was not argued before this court, and was not comprehensively addressed in the subsequent briefs filed in this matter. In passing these amendments, the legislature explicitly indicated its intention that the amendments are to be applied retroactively. We note this expressed intention is not dispositive of any constitutional question that might have arisen in this case under the Ex Post Facto Clause. See *State v. Todd*, 299 Kan. 263, 275, 323 P.3d 829, *cert. denied* 135 S. Ct. 460 (2014). But today's decision eliminates the need for any ex post facto analysis to occur in this case.

## CONCLUSION

We affirm the decision of the Court of Appeals affirming Keel's convictions. We also affirm the district court's decision to classify Keel's 1993 convictions for attempted aggravated robbery and aggravated robbery as person felonies. Accordingly, we conclude that Keel was assigned a correct criminal history score and, in turn, received a legal sentence under the sentencing guidelines. Thus, we affirm his sentence.

\* \* \*

BEIER, J., concurring: I agree with the majority's result and rationale today. I have been persuaded to change my position from that expressed by my votes in *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *modified* by Supreme Court order September 19, 2014, and *State v. Williams*, 291 Kan. 554, 244 P.3d 667 (2010), because of the majority's honest acknowledgment of its need to deal with statutory silence in this exceptional case. In my view, it has done so effectively. This decision should not be read to signal wholesale repudiation of or departure from this court's usual approach to statutory interpretation and construction when we have legislative language on point to examine.

\* \* \*

JOHNSON, J., concurring in part and dissenting in part: I concur in the majority's result, based solely upon our revision of the hold-

ing in *State v. Williams*, 291 Kan. 554, 244 P.3d 667 (2010), whereby we now determine the person/nonperson offense designation of a prior conviction by looking to the designation statutorily assigned to the comparable crime at the time the current crime of conviction was committed. That change eliminates the troublesome circumstance of Kansas having no person felonies prior to the enactment of the Kansas Sentencing Guidelines Act. Accordingly, I view the majority's exercise in statutory interpretation—presumably to vindicate the view espoused by the dissent in *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *modified* by Supreme Court order September 19, 2014—as unnecessarily (and dangerously) complicating and adulterating the process. I dissent from that superfluous portion of the majority opinion.

BILES, J., joins in the foregoing concurring and dissenting opinion.

* * *

NUSS, C.J.: I write separately to advocate for a different analytical process than the one chosen by the majority. As explained below, I would not base this court's decision on our independent revisiting and overruling of two of our precedential decisions from the last 5 years. Rather, I would base our decision on the 2015 statutory amendments that we not only invited the legislature to pass but then also actually ordered the parties to brief.

We unanimously held in *State v. Williams*, 291 Kan. 554, 244 P.3d 667 (2010), that when calculating a criminal history that includes out-of-state convictions, the designation of those crimes as person or nonperson was made as of the date the out-of-state crimes were committed. We based our decision on our prior statements of a fundamental rule for sentencing: that the person convicted of a crime is sentenced in accordance with the penalty provisions in effect at the time the crime was committed. 291 Kan. at 559.

We relied upon this "long-recognized rule" because the parties had not cited, nor had we been able to locate, any Kansas statutes identifying this determinative event. 291 Kan. at 559-60. These

events included, for example, when the prior out-of-state crime was committed, when the current crime was committed, or when the sentencing for the current crime occurred.

The Kansas Legislature took no action in response to *Williams*, despite the majority's position today that *Williams* had failed to apply the "rule" from *State v. Vandervort*, 276 Kan. 164, 72 P.3d 925 (2003)—that the designation of the prior out-of-state crime was made as of the date the defendant committed the current Kansas crime of conviction. Presaging our statement in *Williams* that no Kansas statute identified the determinative event, *Vandervort* had not mentioned any statute, especially the Kansas Sentencing Guidelines Act (KSGA), as the source of the court's ruling. See 276 Kan. at 179-80.

Four years after *Williams*, in *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), the court's majority built upon *Williams*. Echoing our previous inability in *Vandervort* and *Williams* to find any assistance in any statute about such determinative events, we concluded that "*[i]n the absence of a statutory directive*, we are left with our decision in *Williams* that the comparable Kansas offense should be determined as of the date the out-of-state offenses were committed." (Emphasis added.) 299 Kan. at 317. Concerning the particular designation of pre-1993 out-of-state crimes as person or nonperson offenses, we stated more specifically:

"[T]here is no statutory mechanism either through K.S.A. 21-4710(d)(8) or another KSGA provision allowing us to draw a distinction between the current guidelines sentencing statutes and the pre-1993 criminal statutes. We hold that Murdock's two prior out-of-state convictions must be scored as nonperson offenses under K.S.A. 21-4710(d)(8) following our controlling *Williams* precedent. We recognize this rule results in the classification of all pre-1993 crimes as nonperson felonies—an outcome the State characterizes as unreasonable. *But the solution to the State's complaint sits with the legislature.*" (Emphasis added.) 299 Kan. at 319.

We soon received the State's motion for modification of *Murdock* and Murdock's response. We denied the motion but set the matter for oral argument. After oral argument, but without additional briefing, we modified the *Murdock* opinion on September 19, 2014, only to clarify that "this rule results in the classification

of all *out-of-state* pre-1993 crimes as nonperson felonies." (Emphasis added.) 299 Kan. at 319.

The 2015 Kansas Legislature then accepted our *Murdock* invitation to create a statutory solution to the KSGA problem we had exposed. Specifically, the legislature drafted, introduced, received testimony and additional committee vetting, floor debated, and eventually passed House Bill 2053. The Governor signed the bill on March 25, 2015, and the law became effective upon publication in the Kansas Register on April 2. See L. 2015, ch. 5, secs. 1-5. In my view, each branch of government—judicial, legislative, and executive—thus performed its respective role as contemplated in the Kansas Constitution. See *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 888, 179 P.3d 366 (2008) (separation of powers doctrine embodied in the Kansas constitutional framework).

The same day the law became effective, we issued an order for supplemental briefing in the instant case. In our order, we acknowledged that "[t]he issue of how to classify pre-guideline convictions for purposes of determining criminal history is raised in this case." So we commanded:

"Because HB 2053 may be relevant to the resolution of the classification issue and because the parties did not have the opportunity to discuss the statute at the time of briefing and oral argument [on March 6, 2015], *the parties are hereby ordered to file supplemental briefs stating their positions on the applicability of the statute to the present case.*" (Emphasis added.)

We duly received the parties' required briefs: not only their supplemental briefs, but also a response brief by Keel. Among other considerations, they addressed the issue of the new law's retroactivity.

In short, all entities and persons concerned ultimately accepted this court's invitations or complied with its orders. So I would stay true to the procedural course this court has charted since our *Murdock* decision. Accordingly, I would now address the legislature's good-faith efforts to fix the KSGA problem we first uncovered and whose correction we then invited.

In addition to the matter of respect due a coordinate branch of Kansas government, see *Baker v. Carr*, 369 U.S. 186, 217, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962), there is certainly ample precedent

for reviewing the legislature's efforts under such circumstances. And as for the majority's refusal to now address the 2015 amendments in order to wait for litigation before interpreting them—because doing so today "is, at best, impractical"—I submit they are quite ready for our interpretation because we ordered, and received, special briefing on them. 302 Kan. 573. The facts in the instant case do not need further development.

As just one illustration of ample precedent, I point to *State v. Prine*, 287 Kan. 713, 200 P.3d 1 (2006) (*Prine I*). There, we reversed the defendant's convictions for sex crimes against children and ordered retrial due to errors in admitting into evidence his prior bad acts because they failed to meet the requirements of K.S.A. 60-455.

We observed the statute contained language disallowing evidence of prior bad acts admitted only to show propensity to commit a crime. We eventually stated that whether to allow propensity evidence would be up to the legislature:

"[E]vidence of prior sexual abuse of children is peculiarly susceptible to characterization *as propensity evidence forbidden under K.S.A. 60-455 and, thus, that convictions of such crimes are especially vulnerable to successful attack on appeal.* This is disturbing because the modern psychology of pedophilia tells us that propensity evidence may actually possess probative value for juries faced with deciding the guilt or innocence of a person accused of sexually abusing a child. In short, sexual attraction to children and a propensity to act upon it are defining symptoms of this recognized mental illness. . . .

"*Of course, the legislature, rather than this court, is the body charged with study, consideration, and adoption of any statutory change that might make K.S.A. 60-455 more workable in such cases,* without doing unconstitutional violence to the rights of criminal defendants. *It may be time for the legislature to examine the advisability of amendment to K.S.A. 60-455 or some other appropriate adjustment to the statutory scheme.*" (Emphasis added.) 287 Kan. at 737.

As in the instant case, the legislature quickly responded to our invitation with statutory amendments. They included a new provision generally allowing propensity evidence in certain sex offense cases, *i.e.*, "evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative." K.S.A. 2009 Supp. 60-455(d); L. 2009, ch. 103, sec. 12.

At Prine's new trial bad acts evidence was again admitted, he was again convicted, and he again appealed. See *State v. Prine*, 297 Kan. 460, 303 P.3d 662 (2013) (*Prine II*). Again similar to the instant case, the issue of the amendments' retroactivity was among those briefed and argued. We ultimately rejected the defendant's argument that the Ex Post Facto Clause had been violated and proceeded to review the amendments. 297 Kan. at 472. Pointedly, we did not simply disregard the retroactivity issue, reinterpret the original statutory form that we had addressed and invited the legislature to amend in *Prine I*, and then conclude *Prine I* was wrongly decided.

After interpreting and applying the statutory amendments to Prine's circumstances, we ultimately affirmed his convictions. In our statutory analysis, we noted "the legislature's intention to relax the prohibition on evidence of other acts or offenses of sexual misconduct to show propensity . . . in sex crime cases *is explicit* in the statute's new subsection (d)." (Emphasis added.) 297 Kan. at 476.

Instead of following the path traveled by this court in *Prine* and in its other decisions, the majority independently now elects to revisit—and reverse—our decisions in *Williams* and *Murdock*. And it resorts to adding its voice to fill the " 'silence gap' " in the old statute. 302 Kan. at 573. *Prine II* spoke to this specific approach as well:

"We cannot delete provisions or supply omissions in a statute. No matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the language used, the defect is one that the legislature alone can correct. See *State v. Johnson*, 289 Kan. 870, 879, 18 P.3d 46 (2009)." 297 Kan. at 475.

*Prine II* and *Johnson* were not this court's first warnings about judicially adding a voice to fill a silence gap in a statute. Seventy-five years ago this court pronounced:

"Courts frequently face the temptation to usurp legislative functions by writing into statutes something which the legislature itself did not put in them. But, however laudable the end sought may seem to be, the importance of observing the limitations of the judicial function transcends all immediate and temporary consideration. Vital defects in the statute are for the legislature to correct." *Russell v. Cogswell*, 151 Kan. 793, 796-97, 101 P.2d 361 (1940).

One might argue that, in effect, the *Vandervort* and *Williams* courts were filling in statutory gaps—after acknowledging, directly or indirectly, that no statute addressed the question that had been posed. It might be further said, however, that the practical problem with such judicial action is illustrated by the different answers provided in those cases to the same posed question. This is yet another reason for this court to review the 2015 amendments: instead of trying to divine the legislature's intent, we now clearly know it.

The difficulty with divining the legislative intent in order to fill in a statutory gap, instead of clearly knowing that intent, is demonstrated by the majority opinion. One of several specific problems with its approach is the date, or event, it has selected to fill the KSGA's "silence gap." Declaring that pre-KSGA offenses were meant to be scored as person or nonperson, the majority chooses "the date of the current crime's commission" as the determining event for such scoring.

But one might just as easily choose the date the KSGA became effective, *i.e.*, July 1, 1993, when the majority admits almost all crimes expressly received their person or nonperson designation from the legislature. 302 Kan. at 577. That date would be consistent with the majority's conclusion that "the language of K.S.A. 1993 Supp. 21-4710 indicates that *all* prior convictions and/or juvenile adjudications . . . occurring before July 1, 1993, were to be considered and scored for criminal history purposes in order to properly sentence an offender for a current crime of conviction under the KSGA." 302 Kan. 577. As for post-July 1, 1993, crimes, they simply could be scored under the KSGA using the date of their commission, and such designation would remain unchanged. See, *e.g.*, *Williams*, 291 Kan. at 562.

Having two different rules for designations of prior crimes would not be inconsistent with the KSGA. After all, for prior out-of-state convictions, the legislature has declared that the person or nonperson designation will be made by Kansas. But the felony or misdemeanor designation will be made by the convicting state. K.S.A. 21-4711(e) provides:

"An out-of-state crime will be classified as either a felony or a misdemeanor *according to the convicting jurisdiction*. If a crime is a felony in another state, it will

be counted as a felony in Kansas. *The state of Kansas shall classify the crime as person or nonperson.* In designating a crime as person or nonperson comparable offenses shall be referred to." (Emphasis added.)

And such a simple date-based rule certainly would be " 'fair, logical, and easy to apply.' " 302 Kan. at 585 (citing *Vandervort*, 276 Kan. at 180 [quoting *State v. Sylva*, 248 Kan. 118, 121, 804 P.2d 967 (1991)]). It also would have an advantage over the majority's selected rule by not requiring constant recalculations of prior crimes in an offender's criminal history each time a new crime is committed. In other words, "revisionist history" would not be necessary. And there could be a reduction, if not elimination, of other claims, *e.g.*, that due process was violated through lack of notice to the offender that the severity level of his or her long-past crimes would be changed.

Finally, we must consider the source of the majority's selected rule to fill the KSGA's gap. The majority cites *Vandervort*, which in turn quotes *Sylva*. 302 Kan. at 585. The relied-upon statement from *Vandervort* is as follows:

*"Our rule that the penalty parameters for an offense are fixed as of the date of the commission of the offense* is fair, logical, and easy to apply. Neither the State nor a defendant may maneuver a sentencing date to take advantage of or avoid a change in a statute. *State v. Sylva*, 248 Kan. 118, 121, 804 P.2d 967 (1991)." (Emphasis added.) 276 Kan. at 180.

As the majority correctly observes, however, *Sylva* did not involve criminal histories. "[T]hat statement of law from *Vandervort* and *Sylva* refers to sentencing for a *current* conviction and not the issue of how that same conviction should be classified for criminal history purposes if the defendant is convicted of another crime at a later date." 302 Kan. at 587. For this reason, the majority then criticizes *Williams'* reliance upon the *Sylva* language to support its holding: when calculating a criminal history that includes out-of-state convictions, the designation of those crimes as person or nonperson is made as of the date the out-of-state crimes were committed. See *Williams*, 291 Kan. at 560.

But if the *Sylva* language is inapplicable to support *Williams'* holding because *Sylva* does not apply to prior crimes, is it not also inapplicable to support *Vandervort's* holding about prior crimes?

The "rules" from both *Vandervort* and *Williams* apparently have the same root; they just grew in different directions. Both were deemed "logical extensions" of *Sylva*. 302 Kan. at 587; *Williams* 291 Kan. at 559-60.

In sum, the majority's rule for filling the KSGA gap is provided by a decision—*Vandervort*—that did not mention any statute, especially the KSGA, as the source of the court's ruling. See 276 Kan. at 179-80. More critically, the real source of the *Vandervort* ruling instead was caselaw that by the majority's own admission did not even involve prior convictions—the scoring of which was the salient point at issue there and in the instant case.

As explained above, particularly under these circumstances, choosing the determinative dates or triggering events is the job of the legislature, not of this court's majority. And potentially pointing to the 2015 legislative amendments as conclusive proof of legislative intent or confirmation of the majority's opinion is unpersuasive. 302 Kan at 590. Simply put, action by the 2015 legislature does not indisputably prove intent of the 1992 legislature which passed the KSGA, particularly K.S.A. 1993 Supp. 21-4710 upon which the majority principally relies. See 302 Kan. at 576-80; *State Bd. of Nursing v. Ruebke*, 259 Kan. 599, Syl. ¶ 12, 913 P.2d 142 (1996) (statute must be interpreted in context in which it was enacted and in light of legislature's intent at that time); *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 773, 69 P.3d 1087 (2003) (courts ordinarily presume that by changing language of statute legislature intended to change its effect). And even if the legislature originally intended to create the rule adopted by today's majority, that intent arguably changed in 2010 when it failed to modify our holding in *Williams* that was contrary to that original intent. See *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 785, 189 P.3d 508 (2008) (when legislature does not modify statute to avoid a standing judicial construction of that statute, the legislature is presumed to agree with that judicial construction).

In conclusion, the majority's path is a needless departure from our original charted course. Moreover, it introduces unnecessary risk. Specifically, it disregards the legislative intent contained in the express language of the 2015 amendments. See *Prine II*, 297

Kan. at 476 ("the legislature's intention . . . is explicit in the statute's new subsection [d]"). Instead it opts for the venturesome approach of attempting to not only divine the legislature's intention from 1992—which historically has proven uncertain—but also to fill the legislature's "gap," despite the 75-year-old admonition from *Russell* to resist this temptation.

If we stay true to the process that was contemplated by this court in *Murdock* and that progressed through the *Keel* supplemental briefing, then we can address the issue of the retroactivity of the legislative solution contained in House Bill No. 2053, L. 2015, ch. 5, secs. 1 and 2. 302 Kan. at 590; *Prine II*, 297 Kan. at 476. We may also address any other considerations that have arisen in the parties' briefs.

In short, I respectfully dissent.