NOT DESIGNATED FOR PUBLICATION

No. 114,328

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NATHAN A. BROWN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOSEPH BRIBIESCA, judge. Opinion filed March 24, 2017. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before HILL, P.J., BUSER and LEBEN, JJ.


BUSER, J.: In this appeal, Nathan A. Brown contends the district court erred when it denied his presentencing motions to withdraw his guilty plea. According to Brown, he did not receive competent representation from conflict-free counsel and his plea was not fairly and understandingly made. Based upon our review of the record and the parties' briefs, we find no abuse of discretion and, therefore, affirm the rulings of the district court.

1

On October 6, 2014, Brown pled guilty to commercial sexual exploitation of a child, a severity level 5 person felony, after he unlawfully and knowingly procured transportation, paid for transportation, or transported A.M.A., who was 17 years old at the time, within the state with the intent to cause, assist, or promote that person to engage in selling sexual relations. In exchange for Brown's plea, the State promised to make favorable sentencing recommendations and to dismiss a charge of aggravated human trafficking, a severity level 1 person felony.

After verifying that no one had threatened or made Brown any promises regarding his plea; that Brown was satisfied with his attorney's representation; and that he understood his rights, the charges against him, and the consequences of his plea, District Judge Joseph Bribiesca accepted Brown's plea as a knowing, intelligent, and voluntary waiver of his rights and found him guilty.

Prior to sentencing, Brown's newly appointed attorney, Lee H. Woodard, filed a motion to withdraw his guilty plea. Brown asserted there was good cause for withdrawal of his plea because his prior appointed attorney, Bradley P. Sylvester, had a conflict of interest.

On January 28, 2015, Judge Bribiesca held an evidentiary hearing on the motion. At the hearing, Sylvester, who was assigned to the Sedgwick County Conflicts Office of the Board of Indigent Defense Services, testified that although he believed he provided Brown with competent representation, he had recently discovered that his office had previously represented Brown's victim, A.M.A., on another matter. In particular, Sylvester's office had represented A.M.A., a juvenile, as a material witness in a prior unrelated criminal case. According to Sylvester, A.M.A.'s material witness case was

2

closed in 2013, and he began his representation of Brown in this criminal case on May 12, 2014.

Sylvester testified that he first discovered the conflict on October 15 or 16, 2014, shortly after Brown's plea hearing, while he was reviewing office files to identify cases that might involve sentencing issues affected by *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). Sylvester promptly notified all of the appropriate parties, in writing, of the conflict either that day or the day after he discovered the conflict. When asked if he knew about the Conflicts Office's prior representation of A.M.A. before October 15 or 16, Sylvester replied:

> "I did not. In fact, it was Pam Parker who represented her. And, of course, in our office of four attorneys, we talk about our cases, we talk about the negotiations, kind of bounce ideas off. I don't think I ever mentioned the girl's name, and I'm not sure if Pam Parker would have even recognized the girl's name, because . . . she was a material witness [and] that may be the only time our office has ever represented a juvenile as a material witness that I know of. And I don't think Pam had too much to do with her, [because] I found the file and went to her. She did recall the girl at that point, [because] I asked her about it, but I don't think she knew . . . the person's name ahead of time."

Although his office always performs a conflicts check when accepting a new client, Sylvester surmised A.M.A.'s name did not register when a check was performed prior to representing Brown because the Conflicts Office does not ordinarily represent juveniles. Sylvester explained, "I don't do the checks, and . . . I don't know why it wasn't caught, to be honest. [M]y guess is this: The initials [A.M.A.], it was a juvenile, our office didn't pursue who [A.M.A.] was because we don't represent juveniles, so it kind of slipped through."

3

Sylvester learned the State did not plan to call A.M.A. to the stand or introduce any of her prior statements in the commercial sexual exploitation of a child case. He testified that if he had discovered the conflict at the time the conflicts check was conducted, he would have notified the district court that his office could not represent Brown, as "[he] certainly would have assumed that [A.M.A.] was going to be in court, and [he] would have found that to be a conflict."

At the conclusion of the hearing, Judge Bribiesca denied Brown's motion, finding that although Sylvester certainly would have had a duty to file a motion to have another lawyer appointed had he known from the very beginning of the case that his office had represented A.M.A., the conflict did not rise to the level of good cause to withdraw Brown's plea because the conflict did not adversely impact Sylvester's representation of Brown due to the timing of Sylvester's discovery of the conflict.

Subsequently, Brown filed a pro se motion to correct illegal sentence and withdraw his plea. In this motion, Brown contended his plea should be withdrawn because neither Judge Bribiesca nor Sylvester informed him prior to the plea that he would be required to register as a sexual offender for the rest of his life. See Kansas Offender Registration Act (KORA), K.S.A. 22-4901 *et seq*. Brown also complained that he should not be subject to lifetime postrelease supervision. As a result, Brown argued that his plea was not entered knowingly and voluntarily because he did not understand the full range of the consequences due to the district judge's failure to conduct a proper plea colloquy and Sylvester's incompetence. In his motion, Brown also raised an illegal sentencing issue which he has abandoned on appeal.

Judge Bribiesca held a hearing on Brown's motion on March 27, 2015. Brown advised Judge Bribiesca that his motion to withdraw plea was based on his belief that he was not properly informed that a conviction for commercial sexual exploitation of a child

4

carried a lifetime postrelease supervision term. Judge Bribiesca denied Brown's motion because the transcript of the plea hearing clearly demonstrated otherwise:

"All right. Well, I have a copy of the transcript of the plea hearing here in my possession. I've read it before the—before the hearing, and at page nine of the transcript I'm having colloquy with Mr. Brown and I explained to Mr. Brown the potential sentence. And at the very end I say to him, quote, '. . . and you have lifetime post-release supervision,' end of quote.

"Then I say to him, 'Mr. Brown, did you understand what I read to you?' And Mr. Brown says, 'Yes, sir.' 'Any questions about that?' Mr. Brown says, 'No, sir.' Then I follow up with, 'I trust that Mr. Sylvester explained that to you before the hearing.' Mr. Brown's answer is, 'Yes, sir.' That addresses the question."

Brown was sentenced on April 15, 2015, to 114 months' imprisonment followed by lifetime postrelease supervision.

Brown filed this timely appeal, claiming that Judge Bribiesca abused his discretion when he denied both of Brown's presentencing motions to withdraw guilty plea.

ANALYSIS

Prior to sentencing, a district court may, in the exercise of sound judicial discretion, allow a defendant to withdraw a plea of guilty or nolo contendere "for good cause shown." K.S.A. 2016 Supp. 22-3210(d)(1). According to our Supreme Court, the "'good cause' standard . . . is 'a "lesser standard" for a defendant to meet when compared to [the] manifest injustice'" standard required for a defendant who files a postsentence motion to withdraw plea. *State v. Macias-Medina*, 293 Kan. 833, 836-37, 268 P.3d 1201 (2012).

Kansas courts generally consider the following three factors, commonly referred to as the *Edgar* factors, when determining whether a defendant has shown good cause to withdraw a plea: "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made." *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014); see *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). These "'factors need not apply in a defendant's favor in every case, and other factors may be duly considered in the district judge's discretionary decision on the existence or nonexistence of good cause.' [Citation omitted.]" *Macias-Medina*, 293 Kan. at 837. Moreover, while these factors are "viable benchmarks for judicial discretion," district courts should neither mechanically apply them nor rely upon them to the exclusion of other factors. *State v Aguilar*, 290 Kan. 506, 512, 231 P.3d 563 (2010).

Appellate courts will not disturb a ruling on a presentence motion to withdraw plea unless the defendant sufficiently demonstrates that the district court abused its sound discretion. *State v. Kenney*, 299 Kan. 389, 393, 323 P.3d 1288 (2014). When the parties challenge the district court's factual findings, this court reviews those findings under the substantial competent evidence standard. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). Substantial competent evidence is evidence possessing both relevance and substance "that a reasonable person could accept as being adequate to support a conclusion." *State v. Schultz*, 289 Kan. 334, 340, 212 P.3d 150 (2009). When reviewing factual findings, we do not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. *Anderson*, 291 Kan. at 855.

Brown claims that he established good cause to withdraw his plea because he fulfilled two of the three *Edgar* factors—he did not receive competent representation from conflict-free counsel and his plea was not fairly and understandingly made. We will address each of these claims separately.

6

*Was Brown Represented By Competent Counsel?*

To insure that defendants receive a fair trial, the Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees the right to effective assistance of conflict-free counsel. *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012). "'An "actual conflict," for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.'" *State v. Gleason*, 277 Kan. 624, 654, 88 P.3d 218 (2004) (quoting *Mickens v. Taylor*, 535 U.S. 162, 172 n.5, 122 S. Ct. 1237, 152 L. Ed. 2d 291 [2002]). Consequently, as a general matter, "[t]o show a Sixth Amendment violation, a claim of ineffective assistance of counsel based upon a conflict of interest requires the defendant to show that the conflict affected the adequacy of the representation. See *Mickens*, 535 U.S. at 172-73; *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)." *State v. Bricker*, 292 Kan. 239, 245, 252 P.3d 118 (2011).

As Brown points out, however, the *Aguilar* court refused to "equate the lesser K.S.A. [2016 Supp.] 22-3210(d) good cause standard governing a presentence plea withdrawal motion to the high constitutional burden" required for Sixth Amendment purposes by *Mickens*. *Aguilar*, 290 Kan. at 513; accord *Bricker*, 292 Kan. at 245. Instead, in an apparent effort to give meaning to the plain language of K.S.A. 2016 Supp. 22-3210(d), the *Aguilar* court determined that "[m]erely lackluster advocacy—or . . . evidence of an insurmountable conflict of interest among jointly represented codefendants . . .—may be plenty to support the first *Edgar* factor and thus statutory good cause for presentence withdrawal of a plea." *Aguilar*, 290 Kan. at 513. Presumably due to "the particularly egregious facts of th[e] case"—the existence of an insurmountable conflict of interest based upon counsel's concurrent representation of Aguilar and her codefendant— "the [*Aguilar*] majority provide[d] no guidelines for filling the void created by its removal of the *Mickens* standards." *Aguilar*, 290 Kan. at 515; 290 Kan. at 517 (Nuss, C.J., dissenting).

7

Nevertheless, the following statement by the *Aguilar* court is instructive regarding the manner in which we should consider the claimed conflict of interest in this case: "We note, however, that the plain language of the statute—'for good cause shown *and within the discretion of the court*'—should not be ignored. A district court has no discretion to fail to remedy a constitutional violation." 290 Kan. at 513. In other words, while a district court has discretion to grant or deny a presentence motion to withdraw plea when good cause has been shown, it has no such discretion when a constitutional violation is the basis for the withdrawal request. See *State v. Brown*, 46 Kan. App. 2d 556, 562, 263 P.3d 217 (2011) ("If a defendant has shown good cause . . . , the court may allow the defendant to withdraw the plea, exercising the discretion granted by the legislature. Stated another way, the court has a choice, but only when the defendant has shown good cause. However, if the defendant has failed to show good cause, the court has no choice but to deny the defendant's request to withdraw the plea.").

As summarized earlier, Judge Bribiesca found that any conflict in Sylvester's unknowing representation of Brown after another attorney in the Conflicts Office previously represented Brown's victim, A.M.A., in a prior unrelated and concluded case did not establish good cause for the withdrawal of Brown's plea. Central to the district judge's decision-making was the fact that the conflict played absolutely no role in the representation of Brown by Sylvester. Judge Bribiesca explained:

> "For purposes of the record, the Court makes the following findings: In perusing the paperwork that I have in my possession—by paperwork, I mean the file—Mr. Brown was originally charged with aggravated human trafficking, a severity level 1 person felony; in the alternative, he was charged with commercial sexual exploitation of a child, a severity level 5 person felony. He entered a plea to the alternative charge of commercial sexual exploitation of a child, a severity level 5 person felony, thereby saving himself a lot of prison time if he would have been convicted of the severity level 1 offense.

"Based on the evidence presented this morning, the Court finds that at the time of the representation by Mr. Sylvester of Mr. Brown, up to and shortly after the plea, Mr. Sylvester wasn't even aware of the potential conflict.

"Now, for the record, the Court finds that under the evidence presented today, if Mr. Sylvester had known that his office had represented [A.M.A.], if he had known from the very beginning of the case—and by case, I'm talking about Mr. Brown's case—then I believe he certainly would have had a duty to file a motion to have another lawyer appointed, because that certainly on its face appears to be a conflict, but he didn't know. When he found out, he did the right thing. He notified all the parties to let [them] know that he thought there was a conflict. That shows that Mr. Sylvester is a very conscientious individual and he tries to follow the rules of ethics.

"Now, he wasn't aware of this potential conflict at the time of the plea. The plea was entered on the 6th day of October of [2014]. Mr. Sylvester found out about the potential conflict on or about the 15th or 16th of October of [2014]. Therefore, the Court finds that this conflict played absolutely no role in the representation of Mr. Brown by Mr. Sylvester. Mr. Brown was not adversely impacted whatsoever by the conflict that he's arguing about this morning. So for all those reasons, the motion is denied."

On appeal, the parties do not dispute the facts of the matter. From the district judge's findings and the uncontroverted facts developed at the hearing, the following facts are undisputed: (1) Sylvester and the Conflicts Office represented Brown in this criminal case where A.M.A. was the alleged victim; (2) Another attorney associated with the Conflicts Office had previously represented A.M.A. in an unrelated criminal case wherein A.M.A. was a material witness; (3) The Conflicts Office's representation of A.M.A. in the material witness case concluded in 2013; (4) Later, on May 12, 2014, Sylvester and the Conflicts Office began their representation of Brown in this case; (5) When Sylvester and the Conflicts Office were appointed to represent Brown, negotiated a plea agreement, and assisted him in the entry of his guilty plea, Sylvester was unaware that the Conflicts Office had previously provided legal representation to A.M.A.; (6) Shortly after Brown's guilty plea, Sylvester inadvertently learned of the Conflicts Office's

9

prior representation of A.M.A.; and (7) Upon learning of the prior representation, Sylvester notified all parties in writing of the conflict within a day of the discovery.

Having reviewed the legal principles that guide the analysis and the uncontroverted facts relevant to this issue, we next consider the nature of the conflict of interest at issue in this case.

On appeal, Brown is not claiming a Sixth Amendment violation of his right to effective assistance of conflict-free counsel. And he is not asserting that Sylvester's conflict of interest adversely affected the adequacy of his representation. Rather, he contends the district judge erred because Sylvester had a conflict of interest and for that reason should not have been advising Brown with respect to entering a guilty plea or representing him when he entered his guilty plea.

On the other hand, the State urges us to affirm Judge Bribiesca's decision because any conflict that existed did not adversely impact Brown and played no role in the representation of Brown by Sylvester; therefore, there was not good cause to allow the plea to be withdrawn.

Was there a conflict of interest? Under the Kansas Rules of Professional Conduct (KRPC), attorneys owe ethical obligations to both former and current clients; therefore, as a general rule, attorneys shall not represent a client if that representation creates a conflict of interest for the attorney with either former or current clients. See KRPC 1.7 (2017 Kan. S. Ct. R. 300) (conflict of interest; current clients); KRPC 1.9 (2017 Kan. S. Ct. R. 313) (conflict of interest; duties to former clients). Similarly, with some exceptions, lawyers associated in a law firm shall not "knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9." KRPC 1.10(a) (2017 Kan. S. Ct. R. 316).

The State's argument essentially concedes that at the time of Brown's plea, Sylvester had a conflict of interest: "However, a review of the testimony shows that defendant failed to show that *the conflict* actually affected the adequacy of Sylvester's representation." (Emphasis added.) Similarly, we understand Judge Bribiesca's ruling is that although Sylvester had a conflict of interest, "*this conflict* played absolutely no role in the representation of Mr. Brown by Mr. Sylvester. Mr. Brown was not adversely impacted whatsoever by *the conflict.*" (Emphasis added.)

We agree with Brown's assertion, the State's concession, and the district judge's view that Sylvester had a conflict of interest at the time he represented Brown in this matter. This conflict of interest is one of successive representation, that is, where defense counsel has previously represented a codefendant or trial witness. *Galaviz*, 296 Kan. at 182; *Moss v. United States*, 323 F.3d 445, 455 n.15, 459 (6th Cir.) *cert. denied* 540 U.S. 879 (2003).

Does Sylvester's successive representation rise to such a level of good cause that the district court had no discretion to deny Brown's motion to withdraw his plea in this case? Neither Brown nor the State refer us to any on-point legal citation, and we cannot locate any since the seminal *Aguilar* opinion enunciated a new understanding of good cause in conflict of interest cases. But given Brown's assertion on appeal and the unique facts of this case, we do not find any abuse of discretion in the district court's denial of Brown's motion to withdraw his plea.

Brown contends the mere fact of a successive representation conflict mandates good cause to withdraw his plea. Yet, in *Aguilar*, 290 Kan. at 514, a serious case of concurrent representation of multiple defendants with antagonistic defenses, our Supreme Court found the conflict was "insurmountable," precisely because of the myriad of problems such representation actually created for Aguilar. In particular, our Supreme Court noted that this was a constructive possession of illegal drugs case, for which dual

11

representation of clients has been found to be an actual conflict of interest in numerous courts. 290 Kan. at 514 (citing cases). Indeed, in *Aguilar*, defense counsel offered both defendants a joint representation deal ($1,500 total if both pled or $3,000 if both went to trial). Shortly before the joint plea hearing, however, the attorney sought to withdraw from Aguilar's case due to nonpayment of attorney fees which made it "'impossible' for him 'to zealously represent' [Aguilar]." 290 Kan. at 514. Nevertheless, 3 days later, the attorney represented both defendants at the plea hearing without a ruling on the motion to withdraw. But our Supreme Court noticed that Aguilar pled guilty as charged while the other defendant received a dismissal of additional charges which, according to our Supreme Court, "intensifies our concern." 290 Kan. at 514. In short, our Supreme Court's focus in *Aguilar* was not on the fact of the conflict but on "the particularly egregious facts" that resulted from the conflict. 290 Kan. 506, Syl. ¶ 3.

In the present case, Brown does not claim that Sylvester's successive representation had any effect, let alone an adverse effect, on the quality of legal services Sylvester provided him. This is undoubtedly because Sylvester was unaware of the conflict and, therefore, could not be affected in any way by it.

Moreover, Sylvester testified that he believed he provided Brown with competent representation, and at the plea hearing, Brown informed the district court that Sylvester had not made any promises to him or forced him to enter a guilty plea. In fact, Brown asserted that he was satisfied with Sylvester's legal services.

As the party asserting that the district judge abused his discretion, Brown bears the burden of showing such abuse. See *Fritz*, 299 Kan. at 154. In this regard, a judicial action constitutes an abuse of discretion if it is (1) arbitrary, fanciful, or unreasonable, *i.e.*, "no reasonable person would have taken the view adopted by the trial court;" (2) guided by an erroneous legal conclusion; or (3) based upon an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

12

In the district court and on appeal, Brown has not shown an abuse of discretion. He points to no errors of fact or law, nor does he assert that Judge Bribiesca's decision was arbitrary, fanciful, or unreasonable. Moreover, we are persuaded that Brown has failed to show that no reasonable person would have taken the view adopted by the district court.

*Was Brown's Plea Fairly and Understandingly Made?*

Brown contends his plea was not fairly and understandingly made because he was not fully aware of the consequences of his plea. In particular, he claims he was not advised that a conviction for commercial sexual exploitation of a child carried a lifetime postrelease supervision term and a lifetime registration requirement. The State counters that we should affirm the district judge's decision because the evidence supports his conclusion that Brown failed to demonstrate good cause.

Preliminarily, we consider Brown's claim made in his pro se motion that he was unaware of the *lifetime registration* requirement under KORA. At the hearing on the motion, Brown failed to pursue this particular issue or seek a ruling from the district court. On the contrary, Brown advised Judge Bribiesca that he was seeking relief from the court's *lifetime postrelease supervision* term. As clarified by the district judge:

> "THE COURT: All right. Now, let's just get to the point here. Mr. Brown is alleging throughout the motion that he wasn't informed of the lifetime [postrelease] supervision under the statute, is that your understanding, Mr. Woodard?
> "MR. WOODARD: My—that—yes, Your Honor, that he—that he wasn't—in reading the motion that is my understanding, yes.
> "THE COURT: Is that what you're alleging, Mr. Brown?
> "[BROWN]: Yes, sir."

13

Based on the responses given by Brown and his defense counsel, Judge Bribiesca did not consider or rule on Brown's claim that he was never properly advised of the lifetime registration requirement. As a result, Brown failed to preserve the lifetime registration issue for our review because issues not raised before the district court generally may not be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014).

Nevertheless, even if Brown had preserved the lifetime registration issue, in addition to the lifetime postrelease supervision issue (which was preserved) for our review, both arguments would fail on the merits. As a result, we will consider the merits of both the lifetime registration and lifetime postrelease supervision issues.

Critical to our analysis are the facts and statements contained in the transcript of the plea hearing. This record shows that Judge Bribiesca held a very thorough plea hearing during which he verified that Brown was entering his plea with a full understanding of his rights, the charges against him, and the consequences of his plea. Specifically, Brown informed Judge Bribiesca that he had read, reviewed, and discussed with Sylvester two form documents—the Defendant's Acknowledgment of Rights and Entry of Plea and the Plea Agreement. The following conversation then ensued between Judge Bribiesca and Brown:

> "THE COURT: Do you understand all the information in the two forms?
> "[BROWN]: Yes, sir.
> "THE COURT: Do you have any additional questions for Mr. Sylvester regarding the information?
> "[BROWN]: No, sir."

For purposes of this appellate issue, it is important to note that the Defendant's Acknowledgment of Rights and Entry of Plea form outlines the range of penalties associated with a conviction for commercial sexual exploitation of a child, including the

14

fact that this offense carries a lifetime postrelease supervision term. Similarly, the Plea Agreement provides that Brown understood this conviction would result in him being required to register as a sex offender pursuant to K.S.A. 22-4901 *et seq.*, the Kansas Offender Registration Act, and it carries a lifetime postrelease supervision period.

Additionally, Judge Bribiesca advised Brown that if he pled guilty, his potential sentence would range, depending on his criminal history, from a minimum period of imprisonment of 31 months up to a maximum period of imprisonment of 136 months, a maximum fine of $100,000, with a mandatory minimum fine of $2,500, and he would have lifetime postrelease supervision. Brown subsequently confirmed that he discussed the sentencing ramifications of his decision to plead guilty with Sylvester prior to the plea hearing and that he understood the information the district judge imparted regarding his potential sentence.

At the hearing, after Judge Bribiesca accepted Brown's plea, he inquired as to whether the offense required registration under KORA. When the prosecutor responded affirmatively, the district judge questioned the parties as to the notice of duty to register form and the registration term. During this discussion, Brown acknowledged that he had discussed the registration requirement with Sylvester prior to the plea hearing and understood he would need to register pursuant to the terms of the KORA for his lifetime:

> "THE COURT: Is there a registration form?
> "MR. SYLVESTER: It was—
> "THE COURT: Oh, there it is. Okay. All right. I have a registration form, a notice of duty to register here in front of me. It's been filled out. It hasn't been signed. Well, no, it hasn't been signed by Mr. Brown.
> "Mr. Brown, the information contained in the notice of duty to register, did you and your attorney sit down and fill out the form?
> "[BROWN]: I was waiting to sign it in here, but we talked about it.

15

"MR. SYLVESTER: I filled it out in the holding cell area. I just wrote in the information about his social security and all that stuff.

"THE COURT: Okay. But, Mr. Brown, have you had an opportunity to review it for accuracy?

"[BROWN]: Yes. Yes, sir.

"THE COURT: Okay. Is the information in the form accurate?

"[BROWN]: Yes, sir.

. . . .

"THE COURT: All right. Mr. Brown has signed the notice of duty to register.

"Just for the record, that's your signature on the form, correct, Mr. Brown?

"[BROWN]: Yes, sir.

"THE COURT: And you signed it in open court just now?

""[BROWN]: Yes, sir.

"THE COURT: Court is signing the form.

"And, *Mr. Brown, you now know that you will have to register, pursuant to the law, three days upon being released from custody. You understand that*?

"[BROWN]: *Yes, sir*.

"THE COURT: *Okay. Mr. Sylvester has explained all that to you*?

"[BROWN]: *Yes, sir*.

. . . .

"THE COURT: And while we're waiting for copies, Mr. Brown, that duty to register, if memory serves, I don't have the law in front of me, but I believe it's for 15 years in light of the type of offense, or is it longer than that, Miss Hoyt [the prosecutor]?

"MS. HOYT: Actually, Your Honor, it'll be for the defendant's lifetime.

"THE COURT: Registration?

"MS. HOYT: Yeah.

"THE COURT: Okay.

"MS. HOYT: As the law currently stands, it is a lifetime registration.

"MR. SYLVESTER: It was 25 for the first offense, lifetime for second, but I think last July, 2013, they made it lifetime.

"THE COURT: All right. *So it's lifetime registration to go along with the lifetime post-release* [*supervision*]. All right.

"*You understand that, young man*?

"[BROWN]: *Yes, sir*." (Emphasis added.)

16

As shown by this colloquy, Brown was aware of the requirements of lifetime registration and lifetime postrelease supervision. The record demonstrates that Brown entered his plea knowingly and intelligently with a full understanding of the consequences. Accordingly, the district judge did not abuse his discretion when he denied Brown's presentence motions to withdraw his plea.

Affirmed.