NOT DESIGNATED FOR PUBLICATION

No. 115,687

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PATRICK L. DACKIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed June 2, 2017. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant county attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., LEBEN, J., and PATRICIA MACKE DICK, District Judge, assigned.

LEBEN, J.: Patrick Dackin appeals the portion of his sentence under which—after release from prison—he will be subject to lifetime postrelease supervision. The district court ordered lifetime postrelease because of K.S.A. 2016 Supp. 22-3717(d)(1)(G), which provides that anyone convicted of a sexually violent crime after July 1, 2006, "be released to a mandatory period of postrelease supervision for the duration of the person's natural life." Dackin was convicted in 2010, so the district court applied this provision to him.

1

Dackin argues that his case instead should have been controlled by a different subsection of that same statute, K.S.A. 2016 Supp. 22-3717(d)(1)(D), which provides fixed terms for postrelease supervision—up to 36 months—for those sentenced for certain crimes, including sexually violent crimes. That provision applies to persons sentenced for crimes "committed on or after July 1, 1993." K.S.A. 2016 Supp. 22-3717(d)(1). Dackin argues that this provision applies to him since his crime—aggravated indecent solicitation—was committed in 2009.

FACTUAL AND PROCEDURAL BACKGROUND

In 2010, Dackin pled guilty to aggravated indecent solicitation of a child under the age of 14, a severity-level-5 crime. Dackin's criminal-history score was B. (The criminal-history categories range from A, the most serious, to I, the least serious.) Based on this score and the severity of the crime, Dackin's presumptive sentence was between 114 and 128 months in prison. The district court granted Dackin's motion for a shorter sentence and sent him to prison for 75 months.

The district court said during the sentencing hearing that it was also imposing "lifetime parole." The written order of Dackin's sentence (called a "journal entry") didn't reflect this statement; it stated that Dackin would have 36 months of postrelease supervision.

In February 2015, just before Dackin was due to be released from prison, the State filed a motion to correct Dackin's sentence, arguing that he should have been sentenced to lifetime postrelease supervision (neither "lifetime parole" as the sentencing judge had said nor 36 months of postrelease as the journal entry had recorded). After a hearing, the district court agreed and granted the State's motion, modifying Dackin's sentence to include lifetime postrelease supervision.

2

Dackin then appealed to this court.

ANALYSIS

Dackin argues that his sentence is illegal because he should have been sentenced to 24 months of postrelease supervision under K.S.A. 2016 Supp. 22-3717(d)(1)(D) rather than lifetime postrelease supervision under K.S.A. 2016 Supp. 22-3717(d)(1)(G). Whether Dackin's sentence is illegal turns on which of these statutory provisions applies to him, and answering this question requires us to interpret Kansas sentencing statutes. We review statutory-interpretation issues independently, with no required deference to the district court. *State v. Morningstar*, 299 Kan. 1236, 1246, 329 P.3d 1093 (2014).

The parties agree that Dackin's crime was a sexually violent crime as that term is used in these statutes. They differ only as to whether Dackin's case is covered by the lifetime-supervision rule of K.S.A. 2016 Supp. 22-3717(d)(1)(G) or the 24-month-supervision rule of K.S.A. 2016 Supp. 22-3717(d)(1)(D).

K.S.A. 2016 Supp. 22-3717(d)(1)(G) provides that anyone convicted of a sexually violent crime after July 1, 2006, "be released to a mandatory period of postrelease supervision for the duration of the person's natural life." Dackin was convicted in 2010, so the district court concluded that this provision applied to him.

On the other hand, K.S.A. 2016 Supp. 22-3717(d)(1)(D) (as amended in 2013) provides fixed terms for postrelease supervision—up to 36 months—for those sentenced for certain crimes, including sexually violent crimes. That provision applies to persons sentenced for crimes "committed on or after July 1, 1993." K.S.A. 2016 Supp. 22-3717(d)(1). Dackin's crime was committed in 2009, so at first glance, this provision could also apply to him.

These two provisions are subsections of a single sentencing statute, and we must consider them "in pari materia" (Latin for in the same matter) with a view toward reconciling them if possible. *State v. Keel*, 302 Kan. 560, 574, 357 P.3d 251 (2015). We also presume that the legislature does not intend for any portion of the statute to have no meaning or application. 302 Kan. at 574; *Salina Journal v. Brownback*, 54 Kan. App. 2d ___, Syl. ¶ 10, ___ P.3d ___, 2017 WL 1291704 (2017).

Here, Dackin's argument would leave the lifetime-supervision rule of subsection (G) with no cases to apply it to. In his reading, subsection (D) applies to all sexually violent crimes committed from July 1, 1993, forward—even those committed on or after July 1, 2006, where subsection (G) seems to apply.

Our court considered this problem with Dackin's argument, when made by another defendant, in *State v. Herrmann*, 53 Kan. App. 2d 147, 384 P.3d 1019, *petition for rev. filed* December 19, 2016. The *Herrmann* court concluded that the two sections could both be read to have application, depending on the date of the offense. Subsection (D)'s limited period of supervision would apply to those sentenced for sexually violent crimes committed after July 1, 1993, but before July 1, 2006, while subsection (G)'s lifetime supervision would apply to those sentenced for sexually violent crimes committed on or after July 1, 2006. 53 Kan. App. 2d at 153.

Dackin argues that *Herrmann* was wrongly decided and urges us to reach a different result. He is correct that we are not bound to follow the opinions of other panels of this court. See *State v. Moore*, 52 Kan. App. 2d 799, 816-17, 377 P.3d 1162, *petition for rev. granted* December 13, 2016. But none of his arguments address the simple fact that if we were to follow his reading of the statute—either that only subsection (D) applies to him or that both (D) and (G) apply to him and the rule of lenity means that we have to impose the shorter postrelease term under (D)—then subsection (G) would be meaningless and would never apply to any defendant. See *Keel*, 302 Kan. at 574.

4

Dackin's arguments also overlook the history of the 2013 amendments to subsection (D). As *Herrmann* described, the 2013 amendments shortened postrelease supervision for most crimes by removing the requirement that good-time credit (which shortens certain prison sentences by 15 or 20% for good behavior) be added to the postrelease supervision term. Compare K.S.A. 2012 Supp. 22-3717(d)(1)(A)-(C) with K.S.A. 2013 Supp. 22-3717(d)(1)(A)-(C); see *Herrmann*, 53 Kan. App. 2d at 153-54. And these shortened postrelease terms applied retroactively to defendants who had already been sentenced. K.S.A. 2013 Supp. 22-3717(s)-(t). But the legislature did not want to provide a shorter postrelease term to certain offenders, including those who had committed sexually violent crimes, so it amended subsection (D) to create an exception—the shorter postrelease terms wouldn't apply to defendants who had committed sexually violent crimes (among others) because the good-time credit would still be added to the term. 53 Kan. App. 2d at 153-54. Tellingly, the legislature didn't amend subsection (G) (and hasn't amended it since it was first enacted). This history supports the conclusion that the amendments to subsection (D) did not do away with lifetime postrelease supervision for sexually violent crimes committed after 2006, despite Dackin's arguments otherwise.

Since the *Herrmann* opinion was filed, our court has agreed with its conclusion in eleven other cases. *State v. Phillips*, No. 115,107, 2017 WL 1822383, at *1-2 (Kan. App. 2017) (unpublished opinion), *time to file petition for review pending*; *State v. Brook*, No. 115,657, 2017 WL 1535138, at *3 (Kan. App.) (unpublished opinion), *petition for rev. filed* May 17, 2017; *State v. Combs*, No. 115,638, 2017 WL 1296312, at *4-6 (Kan. App.) (unpublished opinion), *petition for rev. filed* May 8, 2017; *State v. Kness*, No. 115,480, 2017 WL 1295994, at *2 (Kan. App.) (unpublished opinion), *petition for rev. filed* May 8, 2017; *State v. Younkman*, No. 115,606, 2017 WL 1035473, at *2-4 (Kan. App.) (unpublished opinion), *petition for rev. filed* March 30, 2017; *State v. Kilgore*, No. 115,010, 2017 WL 748597, at *1-2 (Kan. App.) (unpublished opinion), *petition for rev. filed* March 20, 2017; *State v. Rose*, No. 115,490, 2017 WL 383877, at *3 (Kan. App.)

(unpublished opinion), *petition for rev. filed* February 27, 2017; *State v. Fishback*, No. 114,797, 2016 WL 7031848, at *1 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* January 3, 2017; *State v. Rothstein*, No. 114,749, 2016 WL 7031921, at *2 (Kan. App.) (unpublished opinion), *petition for rev. filed* December 19, 2016; *State v. Ramsey*, No. 114,795, 2016 WL 6925994, at *1-2 (Kan. App.) (unpublished opinion), *petition for rev. filed* December 19, 2016; *State v. Hill*, No. 115,041, 2016 WL 6919609, at *1-2 (Kan. App.) (unpublished opinion), *petition for rev. filed* December 21, 2016.

We too agree with the result reached in *Herrmann*. This result conforms to the plain language of subsection (G) and avoids rendering either subsection (D) or (G) meaningless.

We therefore affirm the district court's judgment.