IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,814

STATE OF KANSAS,
*Appellee*,

v.

KENYON T. CAMPBELL,
*Appellant*.

SYLLABUS BY THE COURT

1.

The general rule in Kansas is that an overruling decision is applied to all similar cases pending as of the date of the overruling decision, regardless of when the cause of action accrued. Consequently, appeals not yet final at the time of the filing of *State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016), are governed by that decision and not the decision it overruled, *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014).

2.

Application of statutes in effect at the time a defendant commits a crime does not violate the Ex Post Facto Clause of the United States Constitution.

3.

Classifying a crime as a person or nonperson offense does not require an offense-specific factual determination or another type of historical factfinding that gives rise to the right to a jury trial under the Sixth Amendment to the United States Constitution. Rather, the determination is a question of law that turns solely on the application of the Kansas Sentencing Guidelines Act—namely, a comparison of the statutory elements of

the prior crime to the statutory elements of comparable offenses as codified at the time the current offense was committed.

4.

When presented with a motion to correct an illegal sentence under K.S.A. 22-3504, a district court should conduct a preliminary examination of the motion to determine whether substantial questions of law or fact are raised. This review does not constitute a "proceeding," which is the key word in K.S.A. 22-3504(1) triggering the right to counsel and the movant's right to be present. If substantial questions of law or fact are not found, the motion may be denied without a "proceeding"—i.e., a hearing at which the movant's presence would be required.

Appeal from Sedgwick District Court; JOHN J. KISNER, JR., judge. Opinion filed December 15, 2017. Affirmed.

*Carl Maughan*, of Maughan Law Group, of Wichita, was on the brief for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: In 1996, Kenyon T. Campbell was convicted of first-degree murder, an off-grid crime under the Kansas Sentencing Guidelines Act (KSGA), and multiple on-grid crimes. When the district court sentenced Campbell for his on-grid crimes, the court classified several out-of-state convictions as person felonies for purposes of computing Campbell's criminal history score. In 2015, Campbell moved to correct what he claimed was an illegal sentence under *State v. Murdock*, 299 Kan. 312, 319, 323 P.3d 846 (2014) (all pre-1993 out-of-state convictions must be classified as nonperson felonies when

2

calculating a defendant's criminal history score), *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). The district court summarily denied relief, and Campbell appealed.

We reject each claim of error asserted on appeal and affirm. Specifically, we hold: (1) Campbell is not entitled to have his out-of-state convictions classified as nonperson offenses under *Murdock*, which was overruled by *Keel*; (2) application of *Keel* to Campbell's motion does not violate the Ex Post Facto Clause of the United States Constitution; (3) the KSGA's person/nonperson classification of pre-KSGA offenses presents a question of law and does not require factfinding that implicates the right to a jury as guaranteed by the Sixth Amendment to the United States Constitution; and (4) the district court did not deprive Campbell of a statutory right to a hearing when it summarily denied relief.

FACTS AND PROCEDURAL HISTORY

A jury convicted Campbell of committing, or participating in the commission of, several offenses in Sedgwick County on March 22, 1996: first-degree murder, aggravated kidnapping, aggravated criminal sodomy, kidnapping, attempted rape, attempted kidnapping, and two counts of aggravated robbery. Campbell entered into a sentencing agreement with the State in which he agreed to be sentenced to life in prison for first-degree murder and to 300 months for aggravated kidnapping, with the 300 months to run concurrent with the life sentence. Campbell and the State further agreed to postpone sentencing on the remaining counts in order to allow Campbell to fulfill his agreement to cooperate in locating Ronald Etheridge, who was also accused of being involved in the crimes, and to testify truthfully at Etheridge's trial. If Campbell fulfilled his part of the agreement, the State committed to recommending a downward durational departures on the sentences that had yet to be imposed.

3

Consistent with the agreement, the district court sentenced Campbell to life in prison for the first-degree murder and to 300 months for the aggravated kidnapping conviction. The court took sentencing on the other counts under advisement. In 2000, more than three years after the original sentencing hearing and after Campbell refused to testify at Etheridge's trial, the district court imposed sentence on the remaining counts: 77 months for the aggravated sodomy conviction, 51 months for each aggravated robbery conviction, 51 months for the kidnapping conviction, 19 months for the attempted rape conviction, and 34 months for the attempted aggravated kidnapping conviction. The district court ordered each of these sentences to run consecutive to each other and consecutive to his prior sentence for aggravated kidnapping.

In sentencing Campbell on each of the convictions covered by the KSGA sentencing grid, the district court considered Campbell's criminal history as scored on the presentence investigation report (PSI). The PSI reported that Campbell had six prior Illinois convictions. Four of those convictions—convictions for attempted robbery, aggravated battery with a gun, and two counts of armed violence—were classified as person felonies on the PSI. Two Illinois drug offenses were classified as nonperson felonies. With these classifications, Campbell had a criminal history score of A. At the time of sentencing, Campbell did not dispute his criminal history score.

Campbell appealed, challenging his convictions and the district court's jurisdiction to impose those sentences that had not been announced at the first sentencing hearing. This court affirmed on direct appeal. *State v. Campbell*, 273 Kan. 414, 44 P.3d 349 (2002). In his direct appeal, Campbell did not challenge the calculation of his criminal history.

4

Moving forward to 2014, this court decided *Murdock*, and Campbell soon thereafter filed a motion to correct an illegal sentence. He argued his criminal history score should have been calculated based on all of his Illinois convictions being considered nonperson felonies. The district court denied his motion without a hearing. The district court refused to apply *Murdock* retroactively and concluded Campbell had waived any objections to his criminal history and was making an impermissible collateral attack.

Campbell requested and received permission to docket his appeal out of time with the Court of Appeals. The case was transferred to this court under Administrative Order 101, which allows transfers to the appellate court with exclusive jurisdiction under Kansas statutes. See K.S.A. 2016 Supp. 22-3601(b)(3) ("Any appeal permitted to be taken from a district court's final judgment in a criminal case shall be taken directly to the supreme court in the following cases: . . . [3] any case in which a maximum sentence of life imprisonment has been imposed . . ." unless the case falls within one of several exceptions, which do not include first-degree murder.); *Kirtdoll v. State*, 306 Kan. 335, 337, 393 P.3d 1053 (2017) ("A ruling on a motion to correct an illegal sentence, where the sentence imposed for a homicide is imprisonment for life, is directly appealable to this court.").

ANALYSIS

Campbell challenges his sentence as illegal under K.S.A. 22-3504(1), which allows for correction of an illegal sentence at any time. Under this broad language, a challenge to a defendant's criminal history can be raised on a motion to correct an illegal sentence even if no challenge was stated at the time of the sentencing. *Keel*, 302 Kan. at 571.

In order to be considered illegal, a sentence must either (1) have been "imposed by a court without jurisdiction"; (2) fail to "conform to the [applicable] statutory provisions"; or (3) be "ambiguous with respect to [the] time and manner in which it is to be served." *State v. Sims*, 306 Kan. 618, 620, 395 P.3d 413 (2017); see L. 2017, ch. 62, § 9 (codifying definition). The determination of whether a sentence meets one of these criteria presents an issue of law, which this court reviews de novo. *State v. Collins*, 303 Kan. 472, 473, 362 P.3d 1098 (2015).

With these general principles in mind, we turn to Campbell's four arguments.

1. *Campbell is not entitled to resentencing based on* Murdock.

Campbell first asserts his sentence is illegal because his criminal history was scored in a manner that is inconsistent with *Murdock*, which held all out-of-state pre-1993 crimes must be classified for criminal history purposes as nonperson felonies. *Murdock*, 299 Kan. at 319. Campbell recognizes that, after the district court proceedings in this case, this court overruled *Murdock* in *Keel* by holding that "a pre-KSGA conviction and/or adjudication must be classified as *either a person or nonperson offense* by comparing the criminal statute under which the prior offense arose to the comparable post-KSGA criminal statute." (Emphasis added.) *Keel*, 302 Kan. at 581. We further held "the comparable post-KSGA criminal statute is the one that was in effect at the time the current crime of conviction was committed." 302 Kan. at 581.

Campbell does not argue that the computation of his criminal history score is illegal under *Keel*. Rather, despite our decision in *Keel*, Campbell asks us to apply *Murdock*, which would be more favorable to him. But "[t]he general rule in Kansas is that an overruling decision is applied to all similar cases pending as of the date of the overruling decision, regardless of when the cause of action accrued." *Sims*, 306 Kan. at

6

622; *State v. Collier*, 306 Kan. 521, 525, 394 P.3d 1164 (2017). This means *Keel*, not *Murdock*, controls the outcome of Campbell's motion to correct an illegal sentence.

In addition, Campbell "respectfully sug[g]ests this matter should be reconsidered and therefore respectfully submits the arguments in support of the reversal of the district court's decision on this case based upon *Murdock*, in order to preserve the arguments and issues for future review." We take this as a request that we reconsider *Keel*. But, as we will more fully discuss, Campbell does not present any arguments that persuade us *Keel* was wrongly decided, especially in light of recent decisions in which we have reaffirmed *Keel* and its analysis. See *Sims*, 306 Kan. at 620-22; *Collier*, 306 Kan. at 522, 524-26.

*Murdock* does not control this appeal, and Campbell is not entitled to relief under the holding in *Keel*.

We pause to note that the 2017 Kansas Legislature amended K.S.A. 22-3504 so that it now provides:  "A sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced." L. 2017, ch. 62, § 9. But this provision and its potential impact on this case were not discussed in the parties' briefs, which were filed before the legislation became effective. See L. 2017, ch. 62, § 13. Given that, we proceed with our analysis without consideration of the possible implications of this new provision or of whether it can be applied in this appeal.

2.  *Applying* Keel *does not violate the Ex Post Facto Clause*.

Second, Campbell invokes the Ex Post Facto Clause of the United States Constitution to argue we should not retroactively apply *Keel* or legislation enacted in response to *Murdock*. We recently rejected the same argument in *Sims* and *Collier*.

As we noted in those decisions, although the *Keel* court discussed the legislation passed in response to *Murdock*, it did not decide *Keel* based on retroactive application of that legislation, which is now codified at K.S.A. 2016 Supp. 21-6810(d) and (e). See *Sims*, 306 Kan. at 622 (citing *Keel*, 302 Kan. at 591); *Collier*, 306 Kan. at 525 (same). Instead, the *Keel* analysis was based on interpretation of K.S.A. 1993 Supp. 21-4710, K.S.A. 21-4711, and other statutes adopted as part of the KSGA in 1993—statutes in force at the time Danny Keel committed several crimes. See *Keel*, 302 Kan. at 576-80. Relying on statutes in effect at the time a crime is committed eliminates the need for an ex post facto analysis. See *Sims*, 306 Kan. at 622 ("Since *Keel* construed the statute regarding person/nonperson classifications that was in effect at the time Sims committed his aggravated battery offense, the 2016 statute is not being retroactively applied to him."); *Collier*, 306 Kan. at 525 ("*Keel*'s rationale also makes it unnecessary to address Collier's argument that K.S.A. 2016 Supp. 21-6108[d] and [e] violate the Ex Post Facto Clause . . . ."); see generally *State v. Barnes*, 278 Kan. 121, 129, 92 P.3d 578 (2004) ("The Ex Post Facto Clause of the United States Constitution forbids legislative enactments which impose a punishment for an act which was not punishable when it was committed or which impose additional punishments to those then prescribed.").

Likewise, here, the 1993 statutes interpreted in *Keel* were those in effect when Campbell committed crimes in 1996; they are not laws that increased the potential punishment after Campbell's crimes were committed. Consequently, nothing distinguishes Campbell's situation from either *Sims* or *Collier*, and Campbell's Ex Post Facto Clause argument fails.

3. Keel *does not violate the Sixth Amendment.*

Next, Campbell argues for the first time on appeal that the classification of his prior offenses as person or nonperson offenses violates the Sixth Amendment to the

8

United States Constitution as interpreted by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 2163-64, 186 L. Ed. 2d 314 (2013).

This same argument was considered and rejected in *Collier*. There we noted that classifying a crime as a person or nonperson offense does not require an offense-specific factual determination or another "type of historical factfinding ordinarily at issue in *Apprendi* cases"—that is, the type of factfinding that gives rise to the right to a jury trial under the Sixth Amendment. Rather, the determination is "a question of law that turns solely on the application of the KSGA—namely, a comparison of the statutory elements of the prior crime to the statutory elements of comparable offenses as codified at the time the current offense was committed." *Collier*, 306 Kan. at 528.

The same conclusion applies here, and we reject Campbell's Sixth Amendment argument.

4. *Summary denial was appropriate.*

Finally, Campbell argues the district court erred by failing to have him present at a hearing to consider his motion to correct an illegal sentence. He contends the plain language of K.S.A. 22-3504(1) grants him the right to a hearing on his motion, at which he is entitled to be personally present and to have the assistance of counsel.

We note that the 2017 amendments to K.S.A. 22-3504 include changes to the language on which Campbell relies. The statute now reads: "Unless the motion and the files and records of the case conclusively show that the defendant is entitled to no relief, the defendant shall have a right to a hearing, after reasonable notice to be fixed by the court, to be personally present and to have the assistance of counsel in any proceeding for

the correction of an illegal sentence." But the amendments did not become effective until after Campbell's hearing. See L. 2017, ch. 62, § 13 (amendments effective on publication). Consequently, we consider the statute as it was worded at the time of Campbell's hearing.

Construing the language as previously written, this court has consistently directed district courts considering a motion to correct an illegal sentence to conduct a preliminary examination of the motion to determine whether substantial questions of law or fact are raised by a motion. See *State v. Gray*, 303 Kan. 1011, 1013, 368 P.3d 1113 (2016). This review does not trigger the right to counsel and the movant's right to be present. See *State v. Duke*, 263 Kan. 193, 196, 946 P.2d 1375 (1997). If substantial questions of law or fact are not found, the motion may be denied without a "proceeding"—i.e., a hearing at which the movant's presence would be required. 263 Kan. at 196.

Here, the plain language of the district court's order indicates a preliminary review was conducted and the court concluded no hearing need be held:  "[I]t is hereby the Order of this Court that the defendant's Motion(s) to Correct Illegal Sentence is denied *without hearing*." (Emphasis added.) Under the law that applied at the time of Campbell's hearing, he had no right to be present for the court's preliminary review or to demand a hearing at which he could be present.

Affirmed.