NOT DESIGNATED FOR PUBLICATION

No. 125,975

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JORDAN JENSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID B. DEBENHAM, judge. Submitted without oral argument. Opinion filed May 3, 2024. Affirmed.

*Darby VanHoutan*, of Kansas Appellate Defender Office, for appellant.

*Carolyn A. Smith*, assistant district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and WARNER, JJ.

PER CURIAM: Jordan Jenson was convicted of possession of methamphetamine. He now challenges the sufficiency of the evidence presented at his jury trial, claiming no evidence showed he knew that a baggie he handed to a police officer contained methamphetamine. He also claims that the prosecutor argued facts not in evidence during closing argument and these improper arguments tainted the outcome of his trial. After carefully reviewing the record and the parties' arguments, we find there was evidence to support the jury's finding that Jenson knowingly possessed methamphetamine, and we find that Jenson received a fair trial on that charge. We thus affirm his conviction.

1

FACTUAL AND PROCEDURAL BACKGROUND

The events giving rise to Jenson's arrest and eventual conviction took place on an evening in August 2019 at a house in Topeka. Someone at the house had called 911 to report an incident. The police officer responding to that call arrived at the house and saw Jenson sitting between two cars under an open garage door. Jenson had a box in front of him that he was using as a makeshift table. The officer approached Jenson and spoke to him briefly. She observed several objects around him—"a glass pipe with residue," "blue tubing," and "a torch that was lit and sitting on the ground." Although the officer was in uniform, she later testified that Jenson "did not seem concerned about [her] or his actions."

The officer left briefly to speak with the person who had reported the incident at the front door but then returned to speak with Jenson. As the officer walked back around to the garage, Jenson did not move or try to hide any of the items around him. Instead, Jenson leaned over and handed the officer a baggie of methamphetamine. The officer arrested Jenson and confiscated the baggie and other items she believed were drug paraphernalia. The officer's actions at the house and her interactions with Jenson were all recorded on her body camera.

Jenson was charged with possession of methamphetamine and possession of drug paraphernalia. The case was tried to a jury, where the State called the investigating officer as a witness and presented—among other evidence—the footage from the officer's body camera. The jury ultimately convicted Jenson of possession of methamphetamine but could not return a verdict on the possession-of-drug-paraphernalia charge. After the State dismissed the charge relating to the drug paraphernalia, Jenson was sentenced to an underlying 30-month prison term and was granted 18 months of probation.

DISCUSSION

On appeal, Jenson presents two challenges to his conviction for possession of methamphetamine. He argues there was no evidence presented at the trial to show that he knew the baggie he gave to the officer contained methamphetamine, and thus the evidence was insufficient to show he knowingly possessed that drug. He also claims the prosecutor misstated the facts during closing argument, and these misstatements deprived him of the right to a fair trial.

For the reasons we explain below, we are not swayed by Jenson's arguments. The jury could infer that Jenson knew that the baggie he handed to the officer contained methamphetamine, and this evidence was sufficient to show he knowingly possessed that substance. And while we agree with Jenson that the prosecutor misstated the facts at various points during closing argument, these misstatements largely concerned the evidence surrounding the charge for possession of drug paraphernalia, on which the jury was split and which the State ultimately dismissed. Given the strength of the evidence that Jenson possessed methamphetamine—especially the video evidence from the officer's body camera showing Jenson personally handed the baggie of methamphetamine to the officer—we are confident the prosecutor's erroneous statements did not affect the outcome of the trial.

1. *There was evidence presented at trial to show Jenson knowingly possessed methamphetamine.*

Jenson first argues that the evidence presented at trial was insufficient to convict him of possession of methamphetamine. When a defendant challenges the sufficiency of the evidence, an appellate court reviews the evidence "in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Rosa*, 304 Kan. 429, Syl. ¶ 1, 371 P.3d 915 (2016).

Appellate courts do not reweigh the evidence, resolve evidentiary conflicts, or reassess witness credibility. *State v. Keel*, 302 Kan. 560, 566, 357 P.3d 251 (2015).

Jenson was convicted of knowingly possessing methamphetamine. To prove this crime, the State was required to present evidence that Jenson knowingly kept methamphetamine in a place where he had access and control. See K.S.A. 2019 Supp. 21-5701(q). A person acts knowingly when they are "aware of the nature of [their] conduct or that the [relevant] circumstances exist." K.S.A. 2019 Supp. 21-5202(i).

Jenson challenges the evidence supporting his conviction in two ways: He asserts that the State did not show that Jenson had exclusive control over the baggie, and he argues that there was no evidence presented to demonstrate that he *knew* the substance within the baggie was actually methamphetamine. We do not find these arguments persuasive.

Turning to the first argument, Jenson points to several considerations that could weigh against the jury's conclusion that he had control over the baggie. He notes that he was not the only person at the house at the time, as the person who had reported the incident was also at the house, and there were two cars in the garage where Jenson sat. But in reviewing a challenge to the sufficiency of the evidence, appellate courts do not reweigh the evidence to determine whether we would have come to the same verdict as the jury. Instead, we look at the evidence presented to determine whether the jury could find Jenson had control over the baggie of methamphetamine. See *Keel*, 302 Kan. at 566.

As the State notes, there was evidence presented at Jenson's trial to show that he had control over the baggie. He was alone in the garage, holding the baggie of methamphetamine in his hands. Viewed in the light most favorable to the State, as our standard of review requires, the evidence was sufficient to show Jenson exercised control

4

over the baggie. Thus, the evidence was sufficient to support the jury's finding that he possessed the methamphetamine in that bag.

Jenson also claims that, even if there was evidence presented to show he exercised control over the methamphetamine, there was no evidence presented to show that he did so knowingly. In other words, he claims that there was no evidence that he knew the baggie he gave to the officer contained methamphetamine. Jenson notes that he had a calm and polite interaction with the uniformed officer, that he did not attempt to escape or evade discovery, and that he voluntarily handed the baggie to the officer before she asked. He asserts that a person would not have acted this way if they knew the baggie contained illegal drugs.

Although there may have been some evidence presented at trial that could have called Jenson's knowledge into question, there was also ample evidence from which a jury could conclude that he knowingly possessed methamphetamine. Most notably, Jenson had the baggie in his hand, and the jury could reasonably infer that he knew what he was holding. Jenson also handed the baggie to the officer; one possible—and reasonable—inference from this action is that Jenson knew the baggie contained an illicit substance. Contrary to Jenson's arguments on appeal, it was not an "improper inferential leap" to conclude that Jenson knowingly possessed the methamphetamine in that baggie. A reasonable jury could find from this evidence that Jenson knew that the baggie he possessed contained methamphetamine.

The evidence presented at trial was sufficient to support Jenson's conviction of possession of methamphetamine.

2. *The factual misstatements in the prosecutor's closing argument did not affect the outcome of Jenson's trial on the charge of possession of methamphetamine.*

Jenson next argues that the prosecutor committed reversible error during closing argument by arguing facts not in evidence and offering her opinion about the evidence presented. To evaluate claims of prosecutorial error, appellate courts use a two-step process:

- First, we determine whether an error occurred—whether the prosecutor's statements, viewed in context, fall outside "the wide latitude afforded prosecutors 'to conduct the State's case in a manner that does not offend the defendant's constitutional right to a fair trial.'" *State v. Coleman*, 318 Kan. 296, 302, 543 P.3d 61 (2024).

- Second, if the prosecutor erred, we determine whether that error prejudiced the defendant's right to a fair trial. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). To avoid reversal when faced with a prosecutorial error, "the State must demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., [that] there is no reasonable possibility that the error contributed to the verdict.'" *Coleman*, 318 Kan. at 307.

Jenson argues that the prosecutor erred during closing arguments by asserting on more than one occasion that the officer observed him using methamphetamine. He notes that the State did not present any evidence that he was using drugs, only that he was holding the baggie containing methamphetamine and was sitting near several items the State believed to be drug paraphernalia. In particular, Jenson points to the following argument by the prosecutor, which sought to describe the officer's observation of and

6

encounter with Jenson in the garage, emphasizing the questionable statements about drug usage:

> "Mr. Jenson was the only person sitting in the garage at the time. In fact, that baggie was directly in his hand. You could also see towards the end of that body cam video that he had *all of his belongings* on that surface. And in fact, that methamphetamine was laying there, but so was the smoking device, or paraphernalia, that [the officer] stated that she saw.
>
> "She described it as a glass tube with residue in it—sorry, a glass pipe with residue in it, and a blue tube. That's inside of this plastic baggie that was also admitted into evidence. You can see here on this side there's still a little bit of brown residue inside of there, and the blue piping is still attached to it.
>
> "*And that is what she believes she saw the defendant using—or, what she did see the defendant using when she walked up to the home*. At that point in time she placed him under arrest and took all of those items that she could into custody.
>
> . . . .
>
> "I want you to take your common knowledge and experience back into that room with you and think about whether it's logical that Mr. Jenson didn't have knowledge that the substance *he was smoking* was methamphetamine as I believe defense counsel is likely to argue with their closing arguments. (Emphases added.)

Then again on rebuttal, the prosecutor stated:

> "Again, you are about to take your common sense back into that jury room with you. It is reasonable, I believe, to assume the evidence presented before you that he was using that meth. That [the officer] *saw him partaking in that activity, or that leisure activity, when she arrived at that home that day*. And that if he was ingesting the substance into his body that he likely knew what it was, or knew the effects he was looking for as a result of ingesting the methamphetamine into his body." (Emphasis added.)

7

We are not persuaded by Jenson's argument that the prosecutor ventured outside the permissible scope of argument in describing the various items surrounding Jenson in the garage as his belongings. Those items were near Jenson with no one else around, and Jenson argued throughout the case that he had been using those items as part of his glass-blowing hobby. The prosecutor's statement that those items belonged to him was a permissible inference based on the evidence at trial.

It likewise may have been possible for the prosecutor to argue that Jenson's actions in the garage indicated he was planning to or had engaged in drug use. He was alone in the garage, surrounded by items that could be used in smoking methamphetamine—a pipe, a lit torch, and rubber tubing—arranged before him. But that is not what the prosecutor argued. Instead, she asserted that the officer *observed* Jenson using or smoking methamphetamine. That assertion was not a proper description of the evidence presented.

Jenson correctly notes that the officer never testified that she observed Jenson using or smoking drugs. Nor did the video from the officer's body camera show he was ingesting or smoking methamphetamine during the encounter. The State acknowledges that these statements were not supported by the evidence presented at trial. A prosecutor has the freedom to craft an argument that includes reasonable inferences based on the evidence, but it is well established that a prosecutor may not argue facts that are not in evidence. *State v. Fraire*, 312 Kan. 786, 792, 481 P.3d 129 (2021); *State v. Timley*, 311 Kan. 944, 949-50, 469 P.3d 54 (2020). We thus agree with Jenson that the prosecutor erred in arguing that the officer observed Jenson using methamphetamine during the encounter. The question is whether these erroneous statements tainted the jury's verdict on the possession-of-methamphetamine charge.

While the State admits the prosecutor's error, it argues the prosecutor's misstatements that the officer observed Jenson using or smoking drugs were largely

8

directed at the other charge discussed at trial: possession of drug paraphernalia. After carefully reviewing the trial record and the parties' arguments, we agree. The prosecutor's misstatements were inappropriate and may have had an impact on the jury's consideration of the paraphernalia charge—the charge on which the jury remained split and the State ultimately dismissed. But we are convinced beyond a reasonable doubt that those statements did not affect the jury's verdict on possession of methamphetamine.

Throughout the trial, Jenson argued that he had been using the items that the State claimed were paraphernalia for his glass-art hobby. The State asserts that in arguing that Jenson had been using the items to smoke methamphetamine, the prosecutor was trying to show those items were, in fact, drug paraphernalia. The context of the prosecutor's statements demonstrates that this is true. During closing argument, the prosecutor described the pipe and the blue tubing that were near Jenson in the garage. The prosecutor then asserted—without evidentiary foundation—that those items are what the officer "believe[d] she saw the defendant using" when she approached the house. When the prosecutor later described the drug-paraphernalia charge, she tied that charge back to her earlier statements of drug use. She explained that the jury "saw him with the pipe in his things" and argued that "those things could be used, or were intended to be used as drug paraphernalia. I.e.; to smoke methamphetamine."

The State also points out that the jury was instructed that "[s]tatements, arguments, and remarks of counsel . . . are not evidence" and that "[i]f any statements are made that are not supported by the evidence, they should be disregarded." Courts presume that juries follow the instructions they are given. *State v. Reid*, 286 Kan. 494, 521, 186 P.3d 713 (2008). The jury's actions in this case illustrate the wisdom of this presumption, as the jury did not reach a verdict on the charge of possession of drug paraphernalia.

Jenson counters that the evidence presented at trial applied to both charges against him and those two charges cannot be viewed in isolation. He notes, as we have

9

previously discussed, that the State was required to prove that he knowingly possessed methamphetamine. And he argues that the prosecutor's repeated misstatements that he was found using methamphetamine could have affected the jury's evaluation of the evidence supporting that charge.

Although we appreciate that the prosecutor's errors could have affected the jury under a different set of circumstances, we are confident they did not do so here in light of the evidence showing Jenson possessed methamphetamine. Notably, the prosecutor's summary of the evidence supporting a conviction for that crime during closing argument did not include any discussion of whether Jenson had been using drugs. Instead, she correctly pointed to the evidence that Jenson held the baggie of methamphetamine in his hand and personally gave that baggie to the officer:

> "Instruction Number 10 is that the defendant—states that the claims must prove the defendant possessed the methamphetamine.
> "As we talked about just briefly a second ago, Mr. Jenson had that baggie in his hand and handed it directly to [the officer] at the scene. She didn't take it off his person or just out of the things laying around. He handed it to her with his own hand."

We agree with the State that the evidence supporting Jenson's conviction of possession of methamphetamine was overwhelming. This evidence was also largely undisputed—the body camera footage clearly shows Jenson holding the baggie and handing it to the officer. Jenson did not dispute the State's forensic testimony that the substance inside the baggie was methamphetamine. He only argued that there was no evidence to show he *knew* that was true—a defense the jury did not find convincing. Under these circumstances, the State has shown beyond a reasonable doubt that the prosecutor's misstatements during closing argument did not affect the jury's verdict. We thus affirm Jenson's conviction for possession of methamphetamine.

Affirmed.